351 F.2d 148
 BARDAHL OIL COMPANY, a Missouri corporation, Bardahl Manufacturing Corporation, a Washington corporation, and Dale McKeown, Franchised Distributor, d/b/a Bardahl East Oklahoma, Appellants,
v.
ATOMIC OIL COMPANY OF OKLAHOMA, Inc., an Oklahoma corporation, Appellees.
ATOMIC OIL COMPANY OF OKLAHOMA, Inc., an Oklahoma corporation, Cross-Appellant,
v.
BARDAHL OIL COMPANY, a Missouri corporation, Bardahl Manufacturing Corporation, a Washington corporation, and Dale McKeown, Franchised Distributor, d/b/a Bardahl East Oklahoma, Cross-Appellees.
 No. 7881.
 No. 7882.
 United States Court of Appeals Tenth Circuit.
 August 25, 1965.
 Rehearing Denied in No. 7882 September 21, 1965.
 
 Robert O. Beresford and Robert Baronsky, Seattle, Wash. (Floyd L. Rheam, Tulsa, Okl., on briefs), for appellants and cross-appellees.
 James R. Head and Lawrence A. G. Johnson, Tulsa, Okl. (Farmer, Woolsey, Flippo & Bailey, Tulsa, Okl., of counsel, on briefs), for appellee and cross-appellant.
 Before PHILLIPS, LEWIS and HILL, Circuit Judges.
 ORIE L. PHILLIPS, Circuit Judge.
 
 
 1
 Atomic Oil Company of Oklahoma, Inc., brought this action against Bardahl Oil Company, Bardahl Manufacturing Corporation, corporations, and Dale McKeown, Franchised Distributor, d/b/a Bardahl East Oklahoma, for alleged infringement of two registered trademarks, seeking injunctive relief and damages.
 
 
 2
 In 1957, Atomic began marketing and selling an oil viscosity additive and a gasoline additive for automotive engines under the trade-mark "Atomic." Because of a possible conflict with a prior existing trade-mark, Atomic ceased using that mark and in June, 1958, commenced the interstate use of the trade-mark "Savmotor."
 
 
 3
 On September 23, 1958, Atomic filed its application in the United States Patent Office for the registration of the trade-mark "Savmotor." In the photostat of the trade-mark in the file wrapper of the Patent Office application, the trade-mark appears in black and white. The mark is for an oil concentrate or oil additive. On the can in which the concentrate or additive is sold commercially, the mark has a red background. At the upper portion of the mark there is an atomic bomb burst design in white in the shape of a mushroom. On this white burst, in large black letters, appears "Savmotor." Below the burst appear the words, in black, "Oil Concentrate." Below that, in rather large white letters, appear the words "Motor Protection." Following that, appear the words "Product of Atomic Oil Company of Oklahoma Tulsa, Oklahoma," and at the base of the mark, on a black background, appear the words, in white, "Cars . Trucks . Tractors . Diesels." The mark was registered on January 12, 1960, as No. 691,152 under the Lanham Trade-Mark Act of 1946. The atomic bomb burst design does not appear on that trade-mark. However, on December 24, 1958, Atomic filed an application for an additional trade-mark. It is substantially the same as the earlier trade-mark, except it contains in black and white the bomb burst design, with the words "Savmotor" and "Motor Oil Additive" imposed thereon in white letters. On March 15, 1960, the last-mentioned mark was granted Atomic as an additional trade-mark, No. 694,445. In the registered marks, instead of "Oil Concentrate" the words used are "Oil Additive."
 
 
 4
 In 1962, the Bardahl Companies began selling, in a green can, a product of the same basic material as the Atomic product. At the top of the design of the Bardahl product, imposed on the green background, are the words, in white, "Scientifically Formulated Oil Stabilizer." Below that appears a white shield, and on that shield appear in red the letters "SAV," then a representation of a drop of oil, followed by the letters "IL." Below the shield, on a green background, appear the words, "Reduces Oil Consumption of Engines" and the words "Cars, Tractors, Trucks, Diesels." On the other side of the can, on the green background appear the letters "SAV," the representation of a drop of oil, and the letters "IL" and below that directions for use and a statement of the characteristics and functions of the Bardahl product. Among other things claimed is that it "reduces oil burning in high-mileage cars — stops embarrassing exhaust smoke, controls piston blow-by and plug fouling — while providing proper lubrication and reducing engine wear." On the side of the can, in fairly large white letters on the green background, appear the words "Bardahl Oil Company, St. Louis 20, Mo. Authorized Blender for Bardahl Manufacturing Corporation, Seattle 7, Washington." The trial court found that the Atomic marks were descriptive words and devices and not entitled to registration under the Lanham Trade-Mark Act of 1946; and it further found that the Atomic marks had acquired a secondary meaning in Missouri, Oklahoma, and Texas, and that there was a likelihood of confusion between the two marks.
 
 
 5
 The trial court granted an injunction against the Bardahl Companies, restraining them from selling their product with the mark "SAVOIL" thereon in the States of Missouri, Texas and Oklahoma. It awarded Atomic $1,485 for contempt of court for violation of the preliminary injunction which it had granted, but denied an accounting for profits or damages, on the ground that there had been no showing of fraud or intent to palm off the Bardahl product as the product of Atomic. From that judgment, both plaintiffs and defendants below have appealed.
 
 
 6
 Atomic claims that the injunction should have embraced all of the states in which it was doing business, and that it should have been awarded damages. The Bardahl Companies contend that Atomic's marks were merely descriptive and that there was no proof of a secondary meaning, even in the States of Missouri, Oklahoma and Texas.
 
 
 7
 A mark, which, when applied to the goods of the person claiming the mark, is merely descriptive of the characteristics or qualities or of the use or functions of the goods cannot be registered.[1]
 
 
 8
 The word "save" means to protect — to preserve or guard from injury. Webster's New International Dictionary, 2d Ed. Unabridged, p. 2223. The word, here, clearly means to save the motor or protect the motor of automotive engines by improving the quality of the motor oil. Of course, as applied to the products here involved, "motor" means an automotive engine. It seems perfectly clear to us that the word "Savmotor" is descriptive of the qualities and the functions of the products and was not entitled to registration under the Lanham Act.
 
 
 9
 To acquire a secondary meaning, descriptive words must "have been used so long and so exclusively by one producer with reference to his" goods or articles "that, in that trade and to that branch of the purchasing public, the word or phrase [has] come to mean that the article" is "his product."[2]
 
 
 10
 In Spang v. Watson, 92 U.S. App.D.C. 266, 205 F.2d 703, c. d. 346 U.S. 938, 74 S.Ct. 378, 98 L.Ed. 426, the court said: "* * * the application of this doctrine of secondary meaning requires that not merely `a subordinate meaning' but `the primary significance of the term in the minds of the consuming public,' * * * `is not the product but the producer.'"[3]
 
 
 11
 In Blisscraft of Hollywood v. United Plastics Co., 2 Cir., 294 F.2d 694, 697, the court said:
 
 
 12
 "To establish a secondary meaning for an article it must be shown that the design is a mark of distinction identifying the source of the article and that purchasers are moved to buy it because of its source."
 
 
 13
 We have carefully examined the evidence and find no proof, whatever, that Atomic's marks had come to identify in the minds of the purchasers thereof Atomic as the manufacturer or producer of the products to which Atomic's marks were affixed. There was evidence that some purchasers were confused between the "Savmotor" products and the "Savoil" products, but there was no evidence, whatever, that such purchasers identified such products as those produced or manufactured by Atomic.
 
 
 14
 Confusion between products is one thing and confusion between the producer of a product and some other producer is another. The questionnaire test made by Dr. William H. Day, a witness for Atomic, was inconclusive, and illustrates the distinction we have made. It gained information only with respect to the product and not with respect to the producer or maker thereof. Day made photographs of the containers of a number of products, which appear in the record as a plaintiff's exhibit. The names of the manufacturers clearly appeared in the photographs of the containers of Du Pont, Champion, Casite and Bardahl products. But in the photograph of the "Savmotor" mark, the words "Product of Atomic Oil Company of Oklahoma" were masked out and did not appear, and in the photograph of "Savoil" the words "Bardahl Oil Company" were wholly omitted. Day testified that he questioned a number of purchasers of oil additives in Tulsa and Oklahoma City and that 69 per cent of the responses identified the "Savmotor" and "Savoil" products as made by the same company. But none of them identified Atomic as the maker or producer of the "Savmotor" product and none indicated any knowledge of their part as to who was the maker or producer thereof. In our opinion, the facts ascertained by the questionnaire had no probative value on the issue of secondary meaning.
 
 
 15
 We conclude that Atomic's marks were merely descriptive; that the proof did not establish they had acquired a secondary meaning in Missouri, Oklahoma, Texas, or elsewhere; and that the finding of the trial court that the marks had acquired a secondary meaning in such states was clearly erroneous.
 
 
 16
 Reversed and remanded, with instructions to enter judgment for the defendants below.
 
 
 
 Notes:
 
 
 [1]
 In re W. A. Sheaffer Pen Co., 158 F.2d 390, 391, 34 CCPA 771; Application of Hercules Fasteners, Inc., 203 F.2d 753, 757, 40 CCPA 944; Hygienic Products Co. v. Huntington Laboratories, 139 F. 2d 508, 510, 31 CCPA 773
 
 
 [2]
 G. & C. Merriam Co. v. Saalfield, 6 Cir., 198 F. 369, 373; Armco Steel Corporation v. Watson, D.C.D.C., 188 F. Supp. 554, 556; Hygrade Food Products Corp. v. H. D. Lee Mercantile Co., 10 Cir., 46 F.2d 771, 772; Curtis-Stephens-Embry Co. v. Pro-Tek-Toe Skate Stop Co., 8 Cir., 199 F.2d 407, 411; Speaker v. Shaler Co., 7 Cir., 87 F.2d 985, 987, c.d. 301 U.S. 695, 57 S.Ct. 923, 81 L.Ed. 1350
 
 
 [3]
 See also: Schulmerich Electronics, Inc. v. J. C. Deagan, Inc., 202 F.2d 772, 777, 40 CCPA 857; Kellogg Co. v. Nat. Biscuit Co., 305 U.S. 111, 118, 119, 59 S.Ct. 109, 83 L.Ed. 73; Food Fair Stores, Inc. v. Lakeland Grocery Corp., 4 Cir., 301 F.2d 156, 161, c.d. 371 U.S. 817, 83 S.Ct. 31, 9 L.Ed.2d 58; G. Leblanc Corporation v. H. & A. Selmer, Inc., 7 Cir., 310 F.2d 449, 457, c.d. 373 U.S. 910, 83 S.Ct. 1299, 10 L.Ed.2d 412