56 CCPA

**Application of AUTOMATIC RADIO MFG. CO., Inc. (two cases).**

**Patent Appeal Nos. 7994, 7995.**

United States Court of Customs and Patent Appeals.

Jan. 16, 1969.

David Wolf, Wolf, Greenfield & Hieken, Boston, Mass., for appellant.

Joseph Schimmel, Washington, D. C. (Raymond E. Martin, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, SMITH, ALMOND, and BALDWIN, Judges.

RICH, Judge.

These are two ex parte trademark appeals from decisions of the Patent Office Trademark Trial and Appeal Board covered in a single opinion, 150 USPQ 70, and argued together in this court but on separate records.

In Appeal No. 7995 on application serial No. 176,347, filed September 5, 1963, appellant seeks to register the word-mark AUTOMATIC RADIO on the Principal Register for "portable radios, automobile radios, truck radios, boat radios, ignition systems, antennas in Class 21, and air conditioners in Class 34,"[1] claiming first use in 1920.

In Appeal No. 7994 on application serial No. 176,348 appellant seeks to register the word-mark AUTOMATIC for the same goods claiming the same date of first use.

By amendment, the first use dates were particularized to have been in 1920 on the radios, in 1960 on antennas, in 1961 on air conditioners, and in 1962 on ignition systems.

In order to cover goods in two separate classifications, Classes 21 and 34, appellant in each application paid additional fees, as required by section 30 of the Trademark Act (15 U.S.C. § 1112, as amended).

In its applications, as the board recognized, appellant relied on section 2(f) of the trademark statute (15 U.S.C. § 1052(f)) and alleged that the marks sought to be registered had "become distinctive of applicant's goods as a result of substantially exclusive and continuous use in interstate commerce for the five years next preceding the

[1]. Through the taking of the appeal to the board the air conditioners were stated to be in Class 31 but after his Answer the examiner, by examiner's amendment, changed it to Class 34.

date of filing of this application."[2] This alleged distinctiveness of the marks, i. e., their acquisition of "secondary" (more accurately, a new primary) meaning, was argued to the examiner. It was supported by numerous affidavits. The principal affidavit was that of appellant's president establishing the amount of business done under the AUTOMATIC and AUTOMATIC RADIO marks. Briefly, it was shown that these marks have been used by appellant in connection with the sale of more than 150 million dollars worth of goods since 1920, more than 100 million of that being since 1958. An estimated 10 million radios bearing the marks have been sold, more than 3 million of them since 1958, representing approximately 90% of appellant's sales since 1958. Since adoption of the marks, 10 million dollars has been spent on advertising, half of that since 1958. Appellant's products are sold through about 1000 wholesale outlets and it has about 2000 sales and service stations throughout the United States. Appellant advertises nationally through trade publications, billboards, newspapers, radio, and television.

The examiner, in his Answers on appeal to the board, recapitulated his twofold grounds of rejection: (1) he held the marks to be "an apt commercial name and not capable of distinguishing the goods of one entity from the goods of others," and held that as to goods *oth-*er than radios the AUTOMATIC RADIO mark was deceptively misdescriptive; (2) his second ground in each application was predicated on the inadequacy of the specimens then on file to show trademark use and, in effect, the examiner called for additional specimens.

■■ The first hurdle we must surmount is the Patent Office Solicitor's contention that, because the notice of appeal contains no reason of appeal directed to the second ground of rejection and there is no argument in appellant's brief thereon, we should dismiss this appeal under the ancient precedent of In re Boyce, 144 F.2d 896, 32 CCPA 718, (1944).

The notice of appeal in each case contains 14 reasons of appeal, including a very broad first reason. We do not think the solicitor has been misled or incommoded and we consider the reasons entirely adequate to raise this question, if it is in the case. However, we do not think it is in the case because of the following special circumstances of the prosecution.

In view of the implied request for additional specimens in the examiner's objection to their inadequacy, applicant, in advance of the hearing before the board, supplied four additional specimens together with an explanatory affidavit[3] of applicant's president. In each application, a communication was sent to

---

2. At the time this allegation was made in the applications, each of them described the goods merely as "radios." While other goods were added later with allegations of first use *within* the five years next preceding the filing of the applications, it does not appear that anything has ever been done to eliminate or explain this discrepancy, which constitutes unfinished business in each application. The board, in view of the ground on which it affirmed the examiner, never reached this question. Indeed, it expressed no awareness of it.

3. In No. 7994 the examiner said:
The second ground of refusal is that the original specimens of record do not substantiate use of the word "Automatic" with goods *other than* "Radios".

*Specimens persuasive of trademark use in connection with the additional items are needed to support their inclusion herein.* Also, any additional specimens must be supported as to use at least as early as the filing date of this application. [Emphasis added.]
The additional specimens supplied in each application were: (1) a nameplate including AUTOMATIC RADIO used on air conditioners; (2) a label used on air conditioners; (3) a nameplate including AUTOMATIC RADIO used on ignition systems; and (4) a carton for antennas with AUTOMATIC RADIO in special type design. The affidavit with which the specimens were submitted asserted use of them before the application filing date.

applicant by a member of the Trademark Trial and Appeal Board, reading:

The reply brief filed January 3, 1966 and the affidavit and specimens filed January 5, 1966 are noted.

These papers have been entered in the file and will be before the Board for consideration at the final decision. The new specimens, or facsimiles, are in the record. We have examined them and it appears to us that they, together with the affidavit, must have overcome the examiner's stated objections. We believe that the board must also have been of that view since it made no reference whatsoever to the examiner's second ground of rejection based on specimens. In its usual summary of the examiner's grounds of rejection the board mentions only ground (1), supra. We think appellant made no argument on the second ground with good reason. Having submitted the new specimens, which were personally acknowledged by a board member and before the board at final hearing with no objection being made to their adequacy, appellant was justified in treating that issue as disposed of. We reject the solicitor's attempt to resurrect it as a reason for dismissal of the entire appeal, and we proceed to a consideration of ground (1).

The board thus restated ground (1): The Examiner of Trademarks has, in effect, refused registration on the ground that "Automatic" and "Automatic Radio" are merely descriptive terms as applied to applicant's goods, and, as such, are not proper subject matter for registration on the Principal Register.

The board agreed with the examiner whose reasoning was, as recited by the board, that *radios* (the only goods specifically discussed by the board) may and often do *contain* many diverse self-acting or self-regulating mechanisms or circuits such as the following: automatic gain control, automatic volume control, automatic frequency control, automatic FM stereo indicator, automatic modulation control, automatic noise limiter, and automatic audio passband

control. Coupling this with a dictionary definition of "automatic," the board postulated that:

As so defined, there can be no question but that the word "Automatic" is generically descriptive of any and all products which operate automatically, *or which contain* self-acting or self-regulating control mechanisms; or that the word "Automatic" followed by the name of a product is a part of the descriptive *name* for such product. [Emphasis added.]

We cannot agree with the board. The above statement is unduly broad and contradicted by the evidence in this case, as well as by common knowledge.

We quite agree that "automatic volume control" is wholly descriptive of that feature of a radio receiver, but that does not make "AUTOMATIC" merely descriptive of the radio receiver. Nor does it make "AUTOMATIC RADIO" the *name* of the receiver. Cars *containing* automatic transmissions are not commonly known as automatic automobiles. Aircraft *containing* automatic pilots are not commonly known as automatic airplanes. Appellant has challenged the Patent Office throughout the prosecution to show an instance of a radio known as an automatic radio and none has been produced. The board cited our decision in Roselux Chemical Co. v. Parsons Ammonia Co., 299 F.2d 855, 49 CCPA 931, to support its statement. We do not find it in point. All we held there was that "sudsy" was wholly descriptive of household ammonia that was in fact sudsy. The record there showed that people called it "sudsy ammonia," and that it was the name of the product. The record here does not show that anyone anywhere calls any radios "automatic radios" in a descriptive sense.

A substantial part of the record here consists of some twenty-four affidavits from wholesalers and retailers of appellant's goods who have been in the business for substantial periods, for the most part 10 or more years. They are all in agreement that throughout their

business careers they have never heard anyone use "automatic" or "automatic radio" to *describe* a radio. They all agree that these terms *indicate* to those in the trade that radios so designated *originate* with appellant, and they all say they have observed members of the consuming public identifying or requesting radios made by appellant by asking for "Automatic" or "Automatic Radio" products. This shows the existence of "secondary" meaning in these terms with respect to appellant's goods, i. e., a new primary meaning in this field which indicates origin.

The board concluded by saying:

> It is well settled that no one is entitled to the exclusive appropriation as a trademark of a term which is generically descriptive of his goods, as it likewise is that no amount of use of such a term in connection with the sale and advertising of a product can confer thereon the status of a trademark.

Four decisions of this court and two decisions of other courts are cited in support. We do not question the statement of law.[4] But we do not agree with the board's conclusion of *fact* that the terms are descriptive of radios, to such an extent that they cannot become valid trademarks. Of course there is *some* descriptive connotation in the word "automatic." But it has not been shown to be the *name* of a radio or of a *kind* of radio. The examiner insisted, arguendo, that clock radios are "automatic," presumably because they turn on automatically by clock control, like an alarm clock. But appellant satisfactorily answers that point by saying that they are *called* "clock radios," not automatic radios. We observe, in passing, that alarm clocks are not, in common parlance, "automatic" clocks. We are dealing here with the common use of language.

█ The statute, by its juxtaposition of sections 2(e) and 2(f) makes it plain that trademarks may often be created from a word or combination of words whose "primary" or original meaning is descriptive in nature if and when the word or words acquire a "secondary," or new primary, meaning which indicates the origin or ownership of goods and so functions as a trademark if at the same time the descriptive term is of such a nature that granting trademark rights therein to one user does not deprive others of their right to the normal use of the language. The Patent Office has not shown in this case that there would be any such deprivation.

█ The board closed its opinion with the following words from Elgin National Watch Co. v. Illinois Watch Co., 179 U.S. 665, 21 S.Ct. 270, 45 L.Ed. 365 (1901), a case involving the geographic designation "Elgin," the name of a city where both parties had their manufacturing establishments:

> * * * no sign or form of words can be appropriated as a valid trademark which from the nature of the fact conveyed by its primary meaning, others may employ with equal truth, and with equal right, for the same purpose.

We think the broad sweep of these words must be modified by the concept now incorporated in the *statute,* some forty-five years after their utterance, that descriptive words may become trademarks and subject to protection *as such,* without inhibiting the use of the same words in a non-trademark sense.

To this point we have dealt only with the use of the marks here involved on various kinds of radios because the board confined its opinion to a discussion of radios. As we read the board opinion, decision was apparently rested on the board's belief in the mere descriptiveness of "automatic," or in the "name" aspect of "automatic radio" with

---

4. We do question the meaning of the term "generically descriptive." See Vandenburgh, Trademark Law and Procedure (1959), page 68, citing two Commissioner's decisions holding that the term is meaningless, Alligator Co. v. Colonial Togs, 107 USPQ 326 (1955), and Ex parte James H. Forbes Tea & Coffee Co., 100 USPQ 164 (1954). The discussion in the former is particularly illuminating.

respect to radios, coupled with the *inclusion* of radios in the list of goods for which appellant seeks registration of its marks. The board apparently considered it unnecessary to go any further and to consider the other goods. Since we disagree with the board on the radio aspect of the case, it now becomes necessary to go a little further.

In No. 7995, the examiner made the rejection that AUTOMATIC RADIO is "deceptively misdescriptive" of the goods other than radios, i. e., air conditioners, ignition systems, and antennas. The only explanation given was a citation of the statute, sections 2(a) and 2(e) (2), and two cases, Sponge and Chamois Institute et al. v. Curtiss-Wright Corp., 120 USPQ 309 (TT&A Bd. 1959), and R. Neumann & Co., v. Bon-Ton Auto Upholstery, 326 F.2d 799, 51 CCPA 934, (1964). The proscription is not against misdescriptive terms unless they are also deceptive. We do not think AUTOMATIC RADIO on an air conditioner, an ignition system, or an antenna, is likely to deceive anyone. The cited cases are distinguishable on their facts and are therefore not controlling or persuasive. In the *Neumann* case, an opposition by a real leather producer to registration of VYNAHYDE, the question was whether the term "HYDE" would deceive people into thinking the product was real leather. We felt it would. In the board case, the Sponge and Chamois Institute and others with like interests objected to registration of CHAMI SPONGE on a synthetic product on the ground, inter alia, that the mark would deceive people into thinking the product was made of real chamois, a type of leather. The board held it deceptive. We do not see a parallel here. We note that the examiner expressly said that "it would not be proper to say that the words 'Automatic Radio' are an apt commercial name" for air conditioners, ignition systems, and antennas; i. e., he held the mark not descriptive of these goods.

At oral argument the solicitor suggested that if we did not agree with the refusal to register on the ground of descriptiveness it would be appropriate to remand the case as neither the examiner nor the board considered the evidence of secondary meaning. There is nothing positive of record to show they did not. We do not think remand is appropriate for the reason that we have not been able to reach a conclusion on the descriptiveness issue without considering the evidence. It seems elementary that one must find out how people in the trade and the purchasers use the terms with respect to the involved goods in order to determine whether or not they are descriptive. It is the same evidence whether the issue be considered to be descriptiveness or "secondary" meaning. Since we have had to consider it, it would be a work of supererogation for the board to consider it, assuming it has not already done so, which is a matter of considerable doubt.

The decision of the board is reversed.

Reversed.

WORLEY, C. J., concurs in the result.

SMITH, J., participated in the hearing of this case but died before a decision was reached.