57 CCPA

**PACIFIC INDUSTRIES, INC., Appellant,**

v.

**MINNESOTA MINING AND MANUFACTURING CO., Appellee.**

**Patent Appeal No. 8307.**

United States Court of Customs
and Patent Appeals.

May 21, 1970.

Donald H. Zarley, Bruce W. McKee, Dennis L. Thomte, Dick, Zarley, McKee & Thomte, Des Moines, Iowa, for appellant.

Charles H. Lauder, St. Paul, Minn., for appellee.

Before WORLEY, Chief Judge, RICH, BALDWIN and LANE, Judges, and RICHARDSON, Judge, United States Customs Court, sitting by designation.

LANE, Judge.

This appeal is from the decision of the Patent Office Trademark Trial and Appeal Board, 155 USPQ 271 (1967), granting appellee's petition to cancel appellant's registration No. 785,620 of "IMPACT" for carbonless transfer copy paper, issued February 23, 1965. We reverse.

Appellee alleged in its petition for cancellation that prior to the first use claimed by appellant, appellee had used the term "impact" in connection with carbonless copy paper of its manufacture, both to describe the nature, functions, characteristics, operation and use of that paper *and* as a common descriptive name therefor. The petition also alleged that the term "impact," when used in connection with such paper, is "entirely, completely and necessarily descriptive," indicating the mechanism by which images are produced on the paper. Appellant denied these allegations and asserted that IMPACT is a mark denominating the origin of appellant's goods, that it had acquired secondary meaning as such, and that it was not descriptive of the goods sold thereunder.

As discussed by the board in its review of the evidence, appellant's copy paper is a mechanical transfer-type paper which requires at least two sheets, one with a coating on the back and the other with a coating on the front, so that when the coated surfaces are mated together, an image will be formed on the second sheet in response to impact or pressure, as from a typewriter key, pencil, etc., against the upper side of the top sheet. Appellee's copy paper, which it markets under the trademark "ACTION", contains microcapsules full of chemicals to be released when the capsules are ruptured by the impact of a machine key or the pressure of a writing instrument. Release of the chemicals forms the image on the paper. To use this paper as copy paper, one simply stacks several sheets on top of each other, the pressure on the top sheet being transmitted to the lower sheets.

The board found that "[t]he record does not in any way support petitioner's assertion in its pleading that 'IMPACT' is a common descriptive name for carbonless paper." The board did find, however, from a review of the evidence, that appellee and others had used the word "impact" so extensively in connection with carbonless copy paper as to render the term merely descriptive within the meaning of 15 U.S.C. § 1052(e) (1).

We think no useful purpose would be served by restating all the evidence of record concerning the use of "impact" before appellant's adoption of the term as a trademark.[1] The following examples are illustrative of such uses. In 1962, Consumer Price Schedules for appellee's "ACTION" paper contained the statement "3M Brand 'ACTION' Paper will record an image by the impact of a business machine key, without the necessity of either ribbon or carbon." Advertisements in various publications stated that customers are "saving time and money with this new record-roll paper that creates its own image from machine key impact! The ink's built right into the paper structure!" Promotional material distributed by appellee in 1964 contained an illustration showing an outline of a machine key striking a sheet of paper and fracturing microcapsules therein. Above the outline of the key are the words KEY IMPACT in heavy block letters, the letters in KEY being about twice as large as the letters in IMPACT.

After discussing the evidence, the board stated:

A term is considered to be merely descriptive within the meaning of Section 2(e) (1) not only if it describes the nature, character, or quality of the goods in connection with which it is used, but if it describes the intended function, use or other characteristics or qualities of the goods. See: Ex parte Heatube Corporation, 109 USPQ

---

423 (Comr., 1956); In re St. Paul Hydraulic Hoist Company, 83 USPQ 315 (CCPA, 1949); Bardahl Oil Company et al. v. Atomic Oil Company of Oklahoma, Inc. [351 F.2d 148], 146 USPQ 637 (CA 10, 1965) and In re W. A. Sheaffer Pen Company, 72 US PQ 129 (CCPA, 1946). "IMPACT" clearly comes within these proscriptions because, to customers and prospective customers for carbonless type paper, it would without any thought or mental exercise indicate that images are formed on the paper by impact whether of a business machine key, stylus, or the like.

■ We cannot agree with the board that the term "IMPACT" as applied to carbonless transfer paper is merely descriptive of such paper. Appellant argues that the term describes, if anything, the action of a machine key against the paper, and we agree. It is the key which does the impacting, not the paper. The cases cited by the board do not compel a different conclusion. In *Heatube* the Commissioner ruled that HEATUBE was not merely descriptive as applied to electrical heating apparatus since it did not tell a purchaser what the goods were, nor what their function and use were. In *St. Paul Hydraulic*, the term DumpIT was held to be merely descriptive as applied to hydraulic units for raising truck bodies. The dumping function was accomplished by the hydraulic units to which the alleged trademark was applied. In *Bardahl* the term "Savmotor" was held to be merely descriptive as applied to an oil additive, and in *Sheaffer* the term "Fineline" was held to be descriptive as applied to mechanical pencils. In the present case it cannot be said that "IMPACT" tells a purchaser what the paper is; it also fails to describe anything which the paper *does*, and we find

this to be a critical distinction over the cited cases.

■ The board further concluded that continued registration of "IMPACT" by appellant would interfere with appellee's right to use the word impact descriptively. To support this conclusion, heavy reliance was placed by the board on this court's opinion in DeWalt, Inc. v. Magna Power Tool Corp., 289 F.2d 656, 48 CCPA 909 (1961). In arguing the correctness of the board's conclusion, appellee similarly relies on *DeWalt*. That case involved the registration of "Power Shop" as a trademark for woodworking saws. The opposer showed that it had promoted its own power tools by the use of the phrase "The Complete Power Shop in One Tool." The phrase was used to describe the goods. In the present case, no one has used "impact" to describe the goods but rather to describe the action of a machine key or other implement. Moreover, we cannot agree with the board that appellant's continued registration of "IMPACT" would constitute a "preemption of the word 'impact'" and interfere with appellee's right to use that word descriptively. From the evidence of record, as illustrated above, appellee has been using the word in a non-trademark sense. Certainly it may continue to do so notwithstanding appellant's registration. Appellant's registration carries with it a presumption of exclusive right, not to any use of the word, but to use of the word in a trademark sense, i. e., as an indication of origin.

We conclude that the board erred in holding appellant's mark to be merely descriptive under 15 U.S.C. § 1052(e) (1). The decision of the board is reversed.

Reversed

WORLEY, C. J., concurs in the result.