**Application of ANDES CANDIES INC.**
**Pat. Appeal No. 9065.**

United States Court of Customs and Patent Appeals.
June 14, 1973.

---

E. Manning Giles, Chicago, Ill., atty. of record, for appellant. Pope, Ballard, Shepard & Fowle, Chicago, Ill., of counsel.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. Jack E. Armore, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, RICH, BALDWIN and LANE, Associate Judges, and ALMOND, Senior Judge.

MARKEY, Chief Judge.

This is an appeal from the decision of the Trademark Trial and Appeal Board, abstracted at 171 USPQ 574 (1971) refusing registration of CREME DE MENTHE for "laminated chocolate mint candy squares." Applicant, relying on use since 1950 and other evidence, sought registration under Section 2(f) of the Trademark Act of 1946.[1] The tribunals below considered the mark a flavor designation and viewed the evidence as fail-

---

1. Application serial No. 207,363, filed May 6, 1968.

ing to establish a *de jure* secondary meaning under Sec. 2(f). We affirm.

Appellant's candies are thin wafers with a top layer of chocolate, a bottom layer of chocolate, and an intermediate layer of green-colored, peppermint-flavored soft candy. The ingredients are "chocolate, milk solids, sugar, fats, artificial coloring, peanut oil, true peppermint flavor." The candies do not contain any creme de menthe liqueur.

Appellant's mark is shown in large, distinct type in a separate line on the boxes in which its laminated chocolate mint candies are packaged. Its trade name or house mark, ANDES, also appears prominently on its boxes. Appellant also packages its CREME DE MENTHE candies for other candy companies. The trade names of those companies appear prominently on their boxes along with the same type of display of CREME DE MENTHE. Appellant made reproductions of specimen box tops of such other candy companies of record in the file of the application.

Appellant introduced a large number of letters requesting its product; the affidavit of its president wherein it is stated that annual sales of CREME DE MENTHE candies exceed $2,500,000, that appellant spent more than $25,000 per year in advertising and promotion of the candies, that its candies are sold through more than 1,400 distributors in 49 states of the United States and in the provinces of Quebec and Ontario, and that it also sells directly through mail order; an affidavit of the vice-president of The Chocolate House, Inc., a manufacturer and distributor of candies, who averred that he has been active in the candy industry since 1932, that in his judgment "Creme de Menthe" would not be the usual, ordinary or likely name for appellant's candy and that "Creme de Menthe" is not a usual or recognized flavor designation in the candy industry.

The examiner placed in the file a container for candy bearing the designation "Creme de Menthe" and distributed by Golden Apples Candy Co., of Southport, Conn.; pages from catalogues distributed by manufacturers of food flavors, two of which list "Creme de Menthe" as a flavor; a Swiss Colony catalogue page showing a candy product in the form of chocolate bottles filled with various liqueur flavorings, none of which was creme de menthe; appellant's listing in *Candy Industry* of its products as "creme de menthe wafers" and another firm's listing of "creme de licorice" flavored candy.

## OPINION

The issue is not whether the mark is merely descriptive of the product, which it is not, but whether it so describes its flavor. A mark is "merely descriptive" under Sec. 2(e)(1) if it merely describes a characteristic (flavor) of the goods (candy). Roselux Chemical Co., Inc. v. Parsons Ammonia Co., Inc., 299 F.2d 855, 49 C.C.P.A. 931 (1962); In re Sun Oil Co., 426 F.2d 401, 57 C.C.P.A. 1147 (1970); In re Helena Rubinstein, Inc., 410 F.2d 438, 56 C.C.P.A. 1110 (1969). Clearly "peppermint" or "chocolate" would be incapable of designating origin of candy and would not therefore be registrable. The reason lies, of course, in the obvious reaction of purchasers upon presentation of the words.

As we said in In re Automatic Radio Mfg. Co., 404 F.2d 1391, 1396, 56 C.C.P.A. 817, 823 (1969):

> It seems elementary that one must find out how people in the trade and the purchasers use the terms with respect to the involved goods in order to determine whether or not they are descriptive.

We think the only possible reaction of purchasers, upon being presented with CREME DE MENTHE chocolate wafers, is the expectation that the wafers will have a mint taste something like that of creme de menthe liqueur. Surely, the purchasers would not expect to find a cherry or rum or butterscotch flavor in the candies. Whether or not the public is aware of the dictionary definition of "creme de menthe" made of

record by the examiner,[2] the words clearly connote a mint flavored liqueur. Of course the purchaser knows the product is a candy not a liqueur, but, as appellant admits, the average purchaser would "expect the candy to have a flavor similar" to that of creme de menthe liqueur.

Appellant argues that its mark only *suggests* a flavor similar to that of the liqueur. If that were so, registration would be proper. We think however that the mark *demands* that, and only that, flavor. Appellant's citations of cases requiring that the mark be the "common descriptive name" of the goods to merit the proscription of Sec. 2(e)(1) are inapt where, as here, the mark is the common descriptive name of a liqueur whose flavor the public expects when it sees the mark. That other candy makers may not have employed "creme de menthe" so widely as to make it a common flavor designation for candy is not material where appellant itself has so employed the mark. Whether or not the mark is misdescriptive in leading the public to expect the actual liqueur in the candy is not before us. It is sufficient to preclude registration that the mark merely describes the flavor characteristic.

Marks which are merely descriptive under Sec. 2(e)(1) may be registered in response to adequate evidence of secondary meaning under Sec. 2(f). In the present case the record reflects competing evidence. That of appellant points to its activities from which the creation of a secondary meaning might be assumed, i. e. sales and advertising expense, and evidence purportedly more direct of an existing secondary meaning, i. e. the letters from customers. That of the examiner points to the words "creme de menthe" as a flavor designation (for foods by two companies and for candy by a third company), to an apparently descriptive use of the mark

of appellant, and to the use of other liqueur names in connection with candy.

The examiner considered his showing of flavor designation so strong as to preclude any possibility whatever that "creme de menthe" could function as a trademark, regardless, in the examiner's words, of appellant's "cloud of special witnesses." We needn't go that far. We agree with the board that appellant's evidence is insufficient to establish recognition of the mark as such by purchasers. The only evidence of record disclosing presentation of the mark to the public are the specimens. They show only that the mark is used in different and larger type above the name of the product. Absent evidence to the contrary, the uses of appellant's mark in the 99 unsolicited customers' letters are fully interpretable as flavor designations rather than recognitions of the term as a trademark. Because of long use, large sales and advertising, it may be assumed that some persons might recognize a mark as designating origin, but that alone is not enough. In re Deister Concentrator Company, Inc., 289 F.2d 496, 48 C.C.P.A. 952 (1961).

The solicitor relies strongly on *Deister*, supra, wherein we said that the courts will not, as a matter of policy, support exclusive rights in that which the public has a right to use. Against that view, appellant cites a number of our decisions which hold that registration of a term or phrase does not preclude use thereof by the public in a descriptive or non-trademark sense.[3] If there be conflict in those lines of decision, its resolution is inappropriate here. In the present case, candy manufacturers have a right to employ "creme de menthe" precisely as appellant does, i. e. to designate a flavor similar to the liqueur, and to do so visually above or before the name of the product ("Creme

---

"a relatively sweet green or white liqueur flavored with various mints, principally peppermint." Webster's Third New International Dictionary (1971).

3. Pacific Industries, Inc. v. Minnesota Mining & Mfg. Co. Inc., 425 F.2d 1265, 57 C.C.P.A. 1282 (1970), In Re Automatic Radio Mfg. Co., 404 F.2d 1391, 56 C.C.P.A. 817 (1969).

De Menthe Wafers") as well as orally. We cannot see, and have not been shown, how the use which appellant agrees the public may make is or could effectively be different from that reflected in the specimens filed with the application and those of other retailers in the record. An exclusive right only to use the mark visually in letters larger than those of the product name is not the right intended by the Act to be registered and would not impede the identical oral expressions mentioned above.

In view of the above, comment is unnecessary on arguments respecting the absence of "T. M." or other trademark indication on appellant's original specimens or the effect of use of the mark by other companies.

Affirmed.