THIS OPINION IS
A PRECEDENT OF
THE T.T.A.B.

Mailed: November 30, 2007

**UNITED STATES PATENT AND TRADEMARK OFFICE**

_____

**Trademark Trial and Appeal Board**

_____

Target Brands, Inc.

v.

Shaun N.G. Hughes

_____

Opposition No. 91163556
to application Serial No. 78170846
filed on October 3, 2002

_____

Michael A. Norwick of Lowenstein Sandler PC for Target Brands, Inc.

James R. Uhlir of Christensen O'Connor Johnson Kindness PLLC for Shaun N.G. Hughes.

_____

Before Quinn, Hohein and Cataldo,
Administrative Trademark Judges.

Opinion by Cataldo, Administrative Trademark Judge:

An application has been filed by Shaun N.G. Hughes to register the mark ULTIMATE POLO ("POLO" disclaimed) for "Sun protective clothing for men, women and children, namely, shirts" in International Class 25.[1]  Applicant has claimed

---

[1] Application Serial No. 78170846 was filed October 3, 2002, alleging first use anywhere and first use in commerce on June 30, 1992.

that ULTIMATE POLO has acquired distinctiveness under Section 2(f) of the Trademark Act.

Target Brands, Inc. has opposed registration on the ground that applicant's designation ULTIMATE POLO is highly descriptive and that the evidence of acquired distinctiveness is insufficient to permit registration on the Principal Register under Section 2(f). Applicant, in his answer, denied the salient allegations of the notice of opposition.

## The Record

The record consists of the pleadings and the file of the involved application. In addition, the parties stipulated to the entire record in this case. *See* Trademark Rule 2.123(b). *See also* TBMP §705 (2d ed. rev. 2004) and the authorities cited therein. Their stipulation included certain documents, including business records, public records, government documents, marketing materials and materials obtained from the Internet. The parties also stipulated to 13 paragraphs of facts involving such issues as applicant's dates of first use of the designation ULTIMATE POLO, as well as the extent and manner in which the designation is used and advertised, the channels of trade for such use, and recognition by third parties of such use; and the dates, nature and extent of descriptive use of

"ultimate polo" by opposer's parent company.[2]  With regard to the facts and documents so stipulated, the parties agreed to reserve the right to object to such facts and documents on the bases of relevance, materiality and weight.

In view thereof, the facts and documents so stipulated by the parties have been considered for their probative value in our determination herein.  *See Id*.  In addition, we note with approval the parties' utilization of stipulated evidence in light of the savings in time and expense for the parties as well as the judicial economy afforded the Board thereby.

Both parties filed briefs, and opposer filed a reply brief.

The parties have designated portions of the record and the briefs as "confidential."  Although the numbers play a significant role in determining whether or not acquired distinctiveness has been established, we are mindful that the sales and advertising figures were introduced under seal.  Thus, while we are privy to the specific figures, we will refer to them in only a very general fashion.  Such figures, had we disclosed them in this opinion, would assist any reader beyond the parties to better understand our reasoning in reaching our decision.  The figures, were we

---

[2] In addition, the parties submitted confidential facts and documents relating to sales and advertising figures by a separate "Attorneys Only Highly Confidential Stipulation."

able to disclose them, would reveal the compelling case in support of our decision that this opinion might not otherwise convey.

The facts, as set forth by the parties in each respective recitation thereof, are largely undisputed. Rather, it is the legal conclusion to be drawn from these facts that forms the crux of this controversy.

### The Parties

Opposer is a wholly owned subsidiary of Target Corporation. Target Corporation owns and operates approximately 1400 retail stores in the United States and the Internet website www.target.com. Opposer owns all of the intellectual property rights of Target Corporation and is engaged in managing and protecting such rights. Beginning in January 2005, opposer's parent (hereinafter, "Target") marketed and sold men's polo shirts described as "ultimate polo" through its retail stores and Internet web site. Target likewise has marketed and sold women's polo shirts utilizing the descriptive term "ultimate polo" since March 2005. From 2005 to the present time, Target has continuously used this descriptive designation for its polo shirts. Between January 2005 and November 2005, total sales of Target's polo shirts were very substantial, at many times the level of applicant's total sales. Annual expenditures to advertise the "ultimate polo" products in newspaper

4

circulars, magazines, in store signage and Internet web pages likewise were very substantial. Neither opposer nor Target uses "ultimate polo" as a trademark, and neither has any intention of doing so. Opposer identifies numerous third-party uses of "ultimate polo" and "ultimate" as descriptive terms in connection with polo and other types of shirts, including the above noted use by Target.

Applicant is engaged in selling garments designed to provide extra protection from the harmful effects of the sun. Applicant's clothing is specifically marketed toward sun sensitive people rather than the ordinary consumer. Applicant began selling sun protective shirts for men, women and children under the designation ULTIMATE POLO in June 1992. Applicant uses the designation ULTIMATE POLO on hang tags affixed to certain of his shirts, catalogs adjacent to pictures of the goods, and in connection with pricing information and offers to sell the goods. Applicant offers his sun protective garments in connection with the ULTIMATE POLO designation by direct marketing through his catalogs, several retail stores, and his Internet website www.sunprecautions.com. Applicant has continuously used the designation ULTIMATE POLO from 1992 to the present. From 1993 through 2005, total sales under the designation were substantial. Total advertising expenditures for the same period likewise were substantial.

## Opposer's Standing

Applicant argues that because opposer does not use ULTIMATE POLO as a trademark; does not sell protective clothing in connection with the designation ULTIMATE POLO; and does not market products with the designation ULTIMATE POLO to consumers seeking sun protective clothing, opposer has no real interest in this case and no reasonable belief in damage resulting from registration of applicant's mark. Applicant argues that, as a result, opposer lacks standing to bring this opposition proceeding. Applicant's arguments are not well taken.

> It is recognized that a party need not be a manufacturer or seller of the goods in connection with which a descriptive, misdescriptive, or merely ornamental designation is used in order to object to the registration thereof. It is sufficient that the party objecting to such registration be engaged in the manufacture and/or sale of the same or related goods and that the product in question be one that could be produced in the normal expansion of that person's business. If the designation in question is found to be merely descriptive, merely ornamental or the like, damage is presumed since a registration thereof with the statutory presumptions afforded the registration would be inconsistent with the right of another person to use these designations or designs in connection with the same or similar goods as it would have the right to do when and if it so chooses. Thus, opposer as a competitor of applicant is a proper party to challenge applicant's right of registration.

*Federal Glass Co. v. Corning Glass Works*, 162 USPQ 279, 282-83 (TTAB 1969). *See also* 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, §20:11 (4th ed. 2007)

("Standing to oppose is presumed when the mark sought to be registered is allegedly descriptive of the goods and the opposer is one who has a sufficient interest in using the descriptive term in his business").

In this case, opposer has introduced evidence of use, by Target and several third parties, of the descriptive designation "ultimate polo" on men's, women's and children's shirts.  As indicated above, opposer is in privity with Target as a wholly-owned subsidiary thereof which, furthermore, is charged with managing and protecting Target's rights, including in the case of a merely descriptive designation the right of Target to the unfettered use of the language in describing the polo shirts which Target markets as "ultimate polo" in competition with applicant.  Because opposer is obligated to protect Target's right and ability to compete with applicant, any harm resulting to Target from registration of ULTIMATE POLO would harm opposer.  Therefore, opposer has standing to demonstrate that applicant is not entitled to registration because Target is entitled to use "ultimate polo" descriptively in the sale of polo shirts.

## Acquired Distinctiveness

Opposer essentially contends that applicant has not enjoyed substantially exclusive use of ULTIMATE POLO due both to Target's use of the identical designation for polo

shirts, as well as to third-party usage of the identical designation for shirts, including polo shirts. Opposer also argues that applicant's mark is highly descriptive, and that, in view thereof, applicant's evidence falls short of proving acquired distinctiveness. Thus, opposer contends, the term applicant seeks to register has not acquired distinctiveness. *See Minnesota Mining & Mfg. Co. v. Addressograph-Multigraph Corp*., 155 USPQ 470 (TTAB 1967).

"Where, as here, an applicant seeks a registration based on acquired distinctiveness under Section 2(f), the statute accepts a lack of distinctiveness as an established fact." *Yamaha International Corp. v. Hoshino Gakki Co*., 840 F.2d 1571, 6 USPQ2d 1001, 1005 (Fed. Cir. 1988). Thus, opposer, not needing to demonstrate the descriptiveness of the term ULTIMATE POLO, concentrated its case on the question of acquired distinctiveness.

As *Yamaha* explains, when matter proposed for registration under Section 2(f) is approved by the United States Patent and Trademark Office for publication, there is a presumption that the examining attorney found a prima facie case of acquired distinctiveness by the applicant for registration. *Id.*, 6 USPQ2d at 1004. In an opposition, "the opposer has the initial burden to establish prima facie that the applicant did not satisfy the acquired distinctiveness requirement of Section 2(f)." *Id.*, 6 USPQ2d

at 1005. "If the opposer does present its prima facie case challenging the sufficiency of applicant's proof of acquired distinctiveness, the applicant may then find it necessary to present additional evidence and argument to rebut or overcome the opposer's showing..." *Id.*

The present case has been completely tried so "the only relevant issue…is which party should prevail on the entire record" regarding acquired distinctiveness, and it is therefore unnecessary to discuss the shifting of burdens or whether prima facie cases have been made out by either party. *Id.*, 6 USPQ2d at 1006. However, under this analysis, the "ultimate burden of persuasion" is on the applicant. *Id.* Finally, the standard for applicant to meet is preponderance of the evidence, "although logically that standard becomes more difficult to meet as the mark's descriptiveness increases." *Id.*, 6 USPQ2d at 1008.

As indicated above, descriptiveness is not an issue given applicant's resort to Section 2(f) of the Trademark Act. Nonetheless, it is necessary to determine, at the outset, the degree of descriptiveness of ULTIMATE POLO ("POLO" disclaimed) for "sun protective clothing for men, women and children, namely, shirts" given that this determination will have a direct bearing on the amount of evidence necessary to show acquired distinctiveness. *Id.*;

and *In re Merrill Lynch, Pierce, Fenner & Smith, Inc*., 828 F.2d 1567, 4 USPQ2d 1141 (Fed. Cir. 1987).

Upon our review of the record, we find that the mark is highly descriptive.  The parties have stipulated to two dictionary definitions of "ultimate."  According to these definitions, "ultimate" is defined, *inter alia*, as follows: "representing or exhibiting the greatest possible development or sophistication:  *the ultimate bicycle*";[3] or "the best or most extreme of its kind: UTMOST."[4]  In addition, we take judicial notice of the fact that "polo" is defined, *inter alia*, as an abbreviation for "polo shirt."[5] In accordance with the above definitions, ULTIMATE POLO consists of the laudatory term "ultimate" and the generic term "polo."  The Federal Circuit has stated, "[m]arks that are merely laudatory and descriptive of the alleged merit of a product are also regarded as being descriptive.…Self-laudatory or puffing marks are regarded as a condensed form of describing the character or quality of the goods."  *In re Boston Beer Co. L.P.*, 198 F.3d 1370, 53 USPQ2d 1056, 1058

---

[3] Bartleby.com, relying upon The American Heritage Dictionary of the English Language, Fourth Ed. 2000.

[4] Merriam-Webster Online, www.m-w.com.

[5] Random House Unabridged Dictionary, 2006.  The Board may take judicial notice of dictionary definitions.  *See University of Notre Dame du Lac v. J.C. Gourmet Food Imports Co.*, 213 USPQ 594, 596 (TTAB 1982); *aff'd*, 703 F.2d 1372, 217 USPQ 505 (Fed. Cir. 1983).

(Fed. Cir. 1999) quoting 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* §11:17 (4th ed. 1996)(internal quotations omitted).  Thus, registration has been refused when a term is held to be merely laudatory as applied to particular goods.  *See In re Inter-State Oil Co., Inc.*, 219 USPQ 1229 (TTAB 1983) (PREFERRED for "bird and squirrel repellant"); and *In re Wileswood, Inc.*, 201 USPQ 400 (TTAB 1978) (AMERICA'S BEST POPCORN! and AMERICA'S FAVORITE POPCORN! for "popped popcorn").  The designation ULTIMATE POLO describes the best possible polo shirts or those representing the greatest and most sophisticated design.  Applicant's catalogs, submitted as part of the stipulated record, confirm that the designation ULTIMATE POLO is used in connection with such highly developed or advanced sun protective polo shirts.  Thus, the designation sought to be registered is highly descriptive as applied to applicant's goods.

Having determined that applicant's mark is highly descriptive as used in connection with its goods, we now turn to the sufficiency of the evidence in support of applicant's claim of acquired distinctiveness.

Acquired distinctiveness and buyer recognition is to be tested in an opposition proceeding as of the date the issue is under consideration.  The filing date is not a cutoff for any evidence developing after that time.  Evidence of sales

11

and advertising after the filing date of the application will be considered. *See McCormick & Co. v. Summers*, 354 F.2d 668, 148 USPQ 272 (CCPA 1966); *Harsco Corp. v. Electrical Sciences, Inc.*, 9 USPQ2d 1570 (TTAB 1988); and *Kaiser Aluminum & Chemical Corp. v. American Meter Co.*, 153 USPQ 419 (TTAB 1967).

We first consider opposer's claim that ULTIMATE POLO is highly descriptive and, thus, applicant's evidence is insufficient to establish acquired distinctiveness. Applicant's continuous use since 1992 is a fairly lengthy period, but not necessarily conclusive or persuasive on the Section 2(f) showing. In prior cases involving usage of comparable or even longer duration, and with some of these uses even being coupled with significant sales and advertising expenditures (not to mention direct evidence of customers' perceptions), the Board or its primary reviewing court has found a failure to demonstrate acquired distinctiveness within the meaning of Section 2(f). *See In re Andes Candies, Inc.*, 478 F.2d 1264, 178 USPQ 156, 158 (CCPA 1973); and *In re Packaging Specialists, Inc.*, 221 USPQ 917, 920 (TTAB 1984).

Applicant's sales since 1992 suggest that applicant has enjoyed a substantial degree of success with his ULTIMATE POLO shirts. It is difficult, however, to accurately gauge the level of this success in the sun protective garment

12

industry in the absence of additional information such as applicant's market share or how the ULTIMATE POLO product ranks in terms of sales in the trade. The sales figures for 14 years, standing alone and without any context in the trade, are not so impressive as to elevate applicant's highly descriptive designation to the status of a distinctive mark. In any event, the sales figures show only the popularity of applicant's product, not that the relevant customers of such products (namely, consumers seeking or requiring sun protective garments) have come to view the term ULTIMATE POLO as applicant's source-identifying mark. *See In re Candy Bouquet International, Inc*., 73 USPQ2d 1883, 1889 (TTAB 2004). *Cf. Bose Corp. v. QSC Audio Products Inc*., 293 F.3d 1367, 63 USPQ2d 1303, 1309 (Fed. Cir. 2002).

Advertising expenditures over a ten-year period likewise are a substantial sum. It is noted, however, that in his catalogs and Internet website advertisements, applicant displays numerous products under a variety of marks, including his prominently displayed and registered marks SOLUMBRA and SUN PRECAUTIONS, in addition to the ULTIMATE POLO product.[6] Thus, it is uncertain how much of

---

[6] Opposer argues in addition that applicant does not use the designation ULTIMATE POLO as a mark, but rather as a descriptive designation in his catalogs for his goods. While we stress that the issue of whether ULTIMATE POLO functions as a mark is not before us, we note nonetheless that applicant's evidence of the extent of his advertising expenditures may simply serve to indicate the popularity of his many other products and

13

the catalog and advertising expenses are allocated to products sold under ULTIMATE POLO. While there is no question that applicant has spent substantial sums of money to promote his product under the designation ULTIMATE POLO, the numbers only suggest the efforts made to acquire distinctiveness, and do not demonstrate that the efforts have borne fruit. *See In re Pingel Enterprises Inc*., 46 USPQ2d 1811 (TTAB 1988); and *In re Pennzoil Products Co*., 20 USPQ2d 1753 (TTAB 1991).

Applicant submits, as further evidence of acquired distinctiveness, two Internet articles concerning his ULTIMATE POLO shirts. These articles review the features of applicant's ULTIMATE POLO shirts and discuss their advantages and price. Applicant submits further evidence that his products, including the ULTIMATE POLO shirt, are available for sale in physician's offices and cancer centers. In addition, the parties have stipulated (Stip. 61) that the "American Academy of Dermatology has recognized Sun Precautions for its work in skin cancer prevention by awarding it its Gold Triangle award in 1997." However, this evidence, while recognizing the efforts and products of applicant and his company, falls short of demonstrating that ULTIMATE POLO has achieved distinctiveness. Given the

---

recognition of his marks other than ULTIMATE POLO. *See In re Bongrain International Corp*., 894 F.2d 1316, 13 USPQ2d 1727 (Fed. Cir. 1990).

highly descriptive nature of ULTIMATE POLO for sun protective shirts for men, women and children, more evidence than what applicant has submitted, especially in the form of *direct* evidence from customers, would be necessary to show that the designation has become distinctive of applicant's goods. To be clear, the record contains insufficient direct evidence that relevant consumers view ULTIMATE POLO as a distinctive source indicator for applicant's goods. As stated earlier, the greater the degree of descriptiveness, the greater the evidentiary burden on the applicant to establish acquired distinctiveness. The evidence of record does not persuade us that the public associates the designation ULTIMATE POLO with applicant, or recognizes the designation as a mark identifying goods emanating from applicant.

We next turn to opposer's contention that applicant's use has not been substantially exclusive. In this connection, opposer points to Target's descriptive use of "ultimate polo," as well as to the uses of the same designation by over thirty other entities in the clothing industry.

We agree with opposer's assessment that the cumulative effect of Target's use and the third-party uses of "ultimate polo" is so extensive that applicant's use fails to qualify as "substantially exclusive" as required under Section 2(f).

15

"When the record shows that purchasers are confronted with more than one (let alone numerous) independent users of a term or device, an application for registration under Section 2(f) cannot be successful, for distinctiveness on which purchasers may rely is lacking under such circumstances." *Levi Strauss & Co. v. Genesco, Inc.*, 222 USPQ 939, 940-41 (Fed. Cir. 1984).

As noted above, Target began selling polo shirts described as "ultimate polo" in January 2005. Opposer has provided confidential sales and advertising figures from that time to November 2005 to support its claim of Target's very substantial sales and advertising expenditures. In addition, opposer has submitted examples of Target's extensive marketing and advertising of men's, women's and children's polo shirts described as "ultimate polo" shirts in newspaper circulars, magazines, in-store signage and Internet web advertisements. Opposer also has identified descriptive uses of "ultimate polo" by over thirty third parties, and has submitted as part of the stipulated record in this case examples of Internet advertisements therefor, including The Executive's Closet ("The ultimate polo shirt"); boaterslife.com ("THE ULTIMATE POLO"); froogle.google.com ("GREG NORMAN ULTIMATE POLO"); Goody's ("The Ultimate Polo"); Active Promotional Products ("ULTIMATE POLO"); eabookstore.com ("Glengate Ultimate

16

Polo"); and shopball.com ("The Ultimate Polo").[7]  While there is no evidence bearing on the precise extent of such third-party use, it is clear nonetheless that there are at least several third parties in addition to Target that use "ultimate polo" to describe polo shirts.

We are not persuaded by applicant's arguments that these uses are inconsequential because the products described thereby are "conventional clothing" (brief, p. 10) that differ from applicant's sun protective shirts and move "in markets far removed from the specialized sun protective garment market" (*Id.*) in which applicant's goods are encountered.  First, the front page of each of applicant's own catalogs touts the advantages of his garments as "Medical Solutions for Sun Sensitive and Sun Sensible People" (Stip. 82).  Those same catalogs discuss not only the sun protective qualities of applicant's goods, but also their light weight, comfort and style.  Thus, applicant's goods appear to be marketed to anyone seeking enhanced protection from the sun, not merely individuals requiring such protection.  Further, there is nothing in the record to suggest that applicant's goods are only available upon proof of a medical condition or upon the advice or prescription of a doctor.  In other words, any consumer seeking enhanced

---

[7] In addition, opposer has submitted evidence from Internet advertisements of numerous third-party uses of "ultimate" describing various types of shirts.

protection from the sun may purchase and wear applicant's goods. Further, at least two of the third-party uses of "ultimate polo" made of record by stipulation claim that the polo shirts described thereby provide enhanced sun protection. As such, the record in this case does not support applicant's claim that his shirts are marketed or otherwise move in trade channels that are separate and distinct from those in which the shirts of opposer or the third-party users of "ultimate polo" may be encountered.

From the evidence of record, we conclude that Target's use has been very substantial and that additional third parties have made use of "ultimate polo" in connection with shirts. Such use seriously undercuts if not nullifies applicant's claim of acquired distinctiveness. Applicant may have used ULTIMATE POLO for several years prior to Target's adoption of the same designation as a descriptive term. However, Target's sales and advertising expenditures related to its "ultimate polo" shirts have been very substantial, and while there is no exact evidence bearing on the extent of additional use of "ultimate polo" by third parties, such users are too numerous to ignore.

We conclude that applicant's designation is highly descriptive as used in connection with applicant's goods, that applicant's use has not been substantially exclusive,

and that the evidence is insufficient to support registration on the Principal Register under Section 2(f).

DECISION:  The opposition is sustained, and registration to applicant is refused.