**AMERICAN GOLD STAR MOTHERS, Inc.
v. NATIONAL GOLD STAR
MOTHERS, Inc. et al.**

**No. 10897.**

United States Court of Appeals,
District of Columbia Circuit.

Argued May 9, 1951.

Decided July 12, 1951.

Robert Vernon Smith, Washington, D. C., for appellant. Joseph W. Kiernan, Washington, D. C., also entered an appearance for appellant.

Arthur J. Hilland, Washington, D. C., for appellees.

Before CLARK, PROCTOR and BAZELON, Circuit Judges.

BAZELON, Circuit Judge.

Appellant brought suit in the District Court for damages and to enjoin appellee "from using the name 'National Gold Star Mothers, Inc.' or any other name which may be so similar to Plaintiff's name as to cause confusion in the minds of eligible Gold Star Mothers, and in the minds of the general public, or government officials" and also "from pursuing a course of conduct tending to injure and harm Plaintiff and to confuse and mislead." The District Court dismissed the suit on the ground that (1) the law of the District of Columbia does not permit a charitable or eleemosynary organization to prevent infringement of its name; (2) in any event, "the names of the two organizations here involved are not so similar as to constitute one name an infringement of the other." Since the case was decided below on a motion to dismiss, we must determine the validity of the District Court's decision

upon the assumption that the allegations of fact contained in the complaint are true. Those allegations tell the following story:

Appellant, American Gold Star Mothers, Inc., was organized on a national basis on June 4, 1928, and was incorporated in January of the following year. It is a non-profit, charitable and patriotic organization with more than 25,000 members in over 400 chapters throughout the United States. Its members are "Gold Star Mothers" whose children died in the service of their country during the World Wars and its objective is "to further any and all patriotic works and to extend assistance to mothers whose sons and daughters have made the supreme sacrifice while serving in the Armed Services of the United States." Appellee, National Gold Star Mothers, Inc., was incorporated in Delaware on March 2, 1950, at which time, according to the complaint, it and its officers were aware that appellant was the recognized national organization for Gold Star Mothers. Despite such awareness, the complaint continues, appellee "with deliberate preconceived intention and calculation to unjustly, unfairly and inequitably injure, harm and take advantage of Plaintiff, and to deceive, confuse and mislead the general public and mothers who are eligible for membership in Plaintiff organization" named its organization "National Gold Star Mothers, Inc." It is further alleged that appellee has solicited members and funds without fully explaining that it is a different organization than appellant and that such activities on its part have resulted in irreparable monetary damage to appellant. The gist of the complaint is the charge that appellee has deliberately chosen a corporate name which is so much like appellant's that appellee is able to benefit from a reputation and good will built by appellant over a period of 22 years.

■■ The law protects corporate names to much the same extent that it protects trade-marks and trade names.[1] "The use by one organization of the name of another for the purpose of appropriating the standing and good will which the other has built up is a well recognized form of the wrong known to the law as unfair competition, against which courts of equity have not hesitated, in any jurisdiction, to use the full power of the injunctive process."[2] Such simulation of names is restrained not because "there is property acquired by one party in the name, but to prevent fraud and deception in the dealing with the party charged with the simulation of a name used by another in a similar business or manufacture."[3] The subsequent appropriator of the name or one confusingly similar thereto usually "seeks an unfair advantage, a 'free ride' on another's established good will * * *. Usually his only purpose is to create confusion as to source, and benefit by it."[4]

■ Source, reputation and good will are as important to eleemosynary institutions as they are to business organizations. "Anything which tends to divert membership or gifts of members from them injures them with respect to their financial condition in the same way that a business corporation is injured by diversion of trade or custom."[5] "Distinct identity is just as important to such an organization, oftentimes, as it is to a commercial company. Its financial credit—its ability to raise funds, its general reputation, the reputation of those managing and supporting it, are all at stake if its name is used by some other organization and the two become confused in the minds of the public."[6] Of

1. See Lawyers Title Ins. Co. v. Lawyers Title Ins. Corp., 1939, 71 App.D.C. 120, 126–128, 109 F.2d 35, 41–43; American Steel Foundries v. Robertson, 1926, 269 U.S. 372, 380, 46 S.Ct. 160, 70 L.Ed. 317; 6 Fletcher, Corporations § 2423 (1931).

2. Purcell v. Summers, 4 Cir., 1944, 145 F. 2d 979, 984.

3. The Most Worshipful Grand Lodge Free, Ancient, and Accepted Masons v. Grimshaw, 1910, 34 App.D.C. 383, 385.

4. Lawyers Title Ins. Co. v. Lawyers Title Ins. Corp., 71 App.D.C. at page 128, 109 F.2d at page 43. See Hanover Star Milling Co. v. Metcalf, 1916, 240 U.S. 403, 423–424, 36 S.Ct. 357, 60 L.Ed. 713.

5. Purcell v. Summers, 4 Cir., 145 F.2d at page 985.

6. 1 Nims, Unfair Competition and Trade-Marks, § 86 (1947). See cases collected ibid. See also 6 Fletcher, Corporations, § 2436 (1931) and cases collected there-

course, the similar names may be composed of descriptive terms which cannot, without more, be made the subject of an exclusive right.[7] Nevertheless, an action may lie because of the attempt of the later corporation to palm itself off as the prior one, whether expressly or by conspicuous failure to disclaim identification with it.[8]

Previous decisions of this court are not in conflict with the general rules stated above. The Most Worshipful Grand Lodge v. Grimshaw was a suit to establish the exclusive right of one fraternal order to a name which had already been in use by another order "for ten years before the litigation began. No question of property or pecuniary injury is involved in the controversy. The single claim of each is the exclusive right to use a name indicating that it is a genuine lodge or organization of an order of Freemasons."[9] The court there refused to inquire into the charge or to grant the relief sought because no "pecuniary injury" was involved.[10] Lemmon v. Kirkland similarly involved no allegation that " 'any person has dealt with the defendant and his faction under the mistaken assumption that he was dealing with the plaintiffs and their faction, nor is there any allegation of an actual pecuniary loss to the plaintiff's faction.' "[11] Original La Tosca Social Club v. La Tosca Social Club merely decided that three members who withdrew from the original La Tosca Social Club, an unincorporated association, "and formed themselves into a corporation, did not by that act acquire any exclusive right to the use of the name of the prior and still then existing unincorporated club or association." Those who remained with

the original association were not barred by the withdrawing members' act of incorporation from later incorporating themselves under the original name. "The name of 'La Tosca Social Club' remained with the original unincorporated association."[12]

■ Each of the cases discussed above deals with peculiar circumstances which are not applicable here. None of them stands for the proposition that an eleemosynary organization may not, in a proper case, enjoin unfair and confusing simulation of its name. Appellant, an organization in existence for over twenty years and composed of over 400 chapters and more than 25,000 members, alleges a deliberate attempt by appellee, an organization engaged in virtually the same activities, to confuse and deceive potential members, contributors and others—with the attendant injury to the older organization's good will, membership and solicitation of funds. Appellant's allegations state a cause of action which, if proved, will entitle it to relief. In a case similar in many ways to the one now before us, International Committee Young Women's Christian Ass'ns v. Young Women's Christian Ass'n of Chicago,[13] the Illinois court said, "The object, work, sources of support, and field of labor of each being substantially the same, and the name of appellee having been adopted and in use by it many years prior to the incorporation of the appellant, the appellant had no right to adopt as its corporate name one so similar to that of appellee, or to incorporate in its name words which would indicate to the public that it was the representative

in; Daughters of Isabella No. 1 v. National Order of Daughters of Isabella, 1910, 83 Conn. 679, 78 A. 333, 335; Salvation Army in United States v. American Salvation Army, 1909, 135 App.Div. 268, 120 N.Y.S. 471.

7. 1 Nims, op. cit. supra note 6 at pp. 66, 280.

8. See Warner & Co. v. Eli Lilly & Co., 1924, 265 U.S. 526, 531–532, 44 S.Ct. 615, 68 L.Ed. 1161; Waterman Co. v. Modern Pen Co., 1914, 235 U.S. 88, 94, 35 S.Ct. 91, 59 L.Ed. 142; W. R. Speare Co. v. Speare, 1920, 49 App.D.C. 318, 321–322,

265 F. 876, 879–880; Lane Bryant, Inc. v. Maternity Lane, 9 Cir., 1949, 173 F.2d 559, 563.

9. 34 App.D.C. at page 385.

10. Id. at page 386.

11. 1916, 44 App.D.C. 512, 514–515. The quotation in the text is from the trial court's opinion, reproduced by the appellate court.

12. 1904, 23 App.D.C. 96, 106.

13. 1901, 194 Ill. 194, 62 N.E. 551, 552–553, 56 L.R.A. 888.

of appellee * * *. * * * from an examination of the entire record it clearly appears that such name was adopted by the appellant advisedly and for the purpose of leading the general public, and the persons with whom it was likely to be associated, and from whom it hoped and expected to obtain support by way of donations, to believe that it stood as the committee and representative of the associations known as 'The Young Women's Christian Association,' then organized in the field where it expected to operate."

Since the gist of the action here is confusion and deception, it does not suffice for the trial court, on a motion to dismiss, to merely compare the names of the two organizations involved. Appellant is entitled to present its proof.[14]

Reversed and remanded.

CLARK, Circuit Judge, dissents.

J. Franklyn Bourne, Washington, D. C., with whom Curtis P. Mitchell, B. Dabney Fox and Frank D. Reeves, Washington, D. C., were on the brief, for appellants.

Joseph H. Batt, Washington, D. C., entered an appearance for appellee.

Before CLARK, PROCTOR, and WASHINGTON, Circuit Judges.

PER CURIAM.

14. See Albert Dickinson Co. v. Mellos Peanut Co., 7 Cir., 1950, 179 F.2d 265, 269–270; Lane Bryant, Inc. v. Maternity Lane, 9 Cir., 1949, 173 F.2d 559, 563, 565; Coca-Cola Co. v. Snow Crest Beverages, 1 Cir., 1947, 162 F.2d 280, 283; Skinner Mfg. Co. v. Kellogg Sales Co., 8 Cir., 1944, 143 F.2d 895, 899.