**AMERICAN HERITAGE LIFE INSURANCE COMPANY, Plaintiff-Appellant-Cross Appellee,**

v.

**HERITAGE LIFE INSURANCE COMPANY, Defendant-Appellee-Cross Appellant.**

**No. 73-1106.**

United States Court of Appeals, Fifth Circuit.

May 13, 1974.

---

Murray Robinson, David Alan Rose, Maynard A. Powell, Houston, Tex., Nelson M. Harris, Jr., Jacksonville, Fla., for plaintiff-appellant.

Jack C. Goldstein, John F. Lynch, Houston, Tex., for defendant-appellee.

Before THORNBERRY, GODBOLD and CLARK, Circuit Judges.

THORNBERRY, Circuit Judge:

Fundamentally, this appeal turns on the labels which the law of service marks and unfair competition ascribes to a single word. Unfortunately, the law is sometimes confusing, and consequently, the parties to this suit have been in legal combat for years in an attempt to convince the courts that the word means what each wants it to mean. Both parties have appealed from the decision of the district court because neither is entirely satisfied with the result reached there. The district court found that the word "Heritage," as used in the corporate names of these two parties, is generic or descriptive, rather than distinctive, of life insurance, that Heritage Life Insurance Company (HLIC) used the word in commerce before American Heritage Life Insurance Company (AHLIC) used the word before the public, that there is no secondary meaning in the word "Heritage" which the public associates with AHLIC or its insurance services, that HLIC is not barred by res judicata or collateral estoppel from defending in this action or counterclaiming for cancellation of AHLIC's registered service mark, that HLIC is guilty of neither service mark infringement nor unfair competition, and that HLIC is not entitled to a cancellation of AHLIC's service mark registration.

Undaunted, AHLIC renews its contentions below that HLIC is infringing upon its registered service mark in violation of 15 U.S.C. §§ 1114, 1116, that HLIC is infringing upon its common law trade name, and that prior proceedings before the Patent Office and the court bar both HLIC's defense and its counterclaim. While AHLIC seeks no damages, it does seek injunctive relief to prevent HLIC from doing business without using a prefix with the word "Heritage." Not wholly content with its victory below, HLIC challenges only that part of the district court's order denying cancellation of AHLIC's service mark registration.[1]

## I

The history of these two insurance companies is a litigious one. AHLIC was incorporated in accordance with the laws of the State of Florida on September 11, 1956, and has its principal offices in Jacksonville, Florida. HLIC was incorporated on July 26, 1957, in Arizona and has its executive offices in Los Angeles, California. The parties first became aware of each other's existence in March of 1959 when AHLIC's president visited HLIC's vice president. HLIC initially operated only as a reinsurer, but is presently involved in the direct sale of life insurance in twenty-two states. AHLIC has, since its inception, been dealing in the direct sale of life insurance, and is presently admitted to do business in forty-nine states.

In 1960, HLIC sued the Heritage Life Insurance Company of California for trade name infringement. The suit was settled when the latter agreed to change its name to Peoples Heritage Life Insurance Company. At the same time, HLIC filed an application to register "Heritage" as a service mark, alleging first use in interstate commerce in January of 1958. In 1961, HLIC's application was published by the Patent Office and AHLIC announced its opposition, claiming superior rights in the service mark "American Heritage."

---

1. Jurisdiction is predicated upon 15 U.S.C. § 1121 and 28 U.S.C. § 1338(a), for actions arising under the trademark laws of the United States; 28 U.S.C. § 1338(b), creating pendent jurisdiction for the claim of unfair competition; 15 U.S.C. § 1119, authorizing the court in a registered mark action to order the cancellation of registrations; and 28 U.S.C. § 1332, diversity.

On May 1, 1964, while the HLIC application was still pending, AHLIC applied for registration of the service mark "Heritage" for the service of planning and underwriting life and health insurance, alleging first use in interstate commerce in July 1957. The Patent Office Trademark Trial and Appeal Board sustained AHLIC's opposition to HLIC's application on July 30, 1964. 143 U.S.P.Q. 244. Subsequently, on December 22, 1964, AHLIC's application was published, and there was no opposition.

HLIC appealed the denial of its request for registration to the United States District Court for the Southern District of Florida, and AHLIC counterclaimed for infringement. But HLIC's suit was dismissed with prejudice and without findings, for failure to state a claim upon which relief could be granted. The Florida district court also entered a voluntary dismissal without prejudice of AHLIC's counterclaim. Soon thereafter, on June 1, 1965, the Patent Office granted AHLIC's application for service mark registration. AHLIC filed this suit on June 20, 1966, and on August 30, 1972, after a full trial, the Texas district court denied the relief requested by AHLIC and denied HLIC's petition for cancellation of AHLIC's service mark registration.

II

We are thus faced with (1) a dismissal with prejudice by the Florida district court of HLIC's petition for registration, (2) a dismissal without prejudice by the Florida district court of AHLIC's counterclaim for infringement, (3) a Trademark Trial and Appeal Board decision sustaining AHLIC's opposition to HLIC's petition for registration, (4) an ex parte Patent Office proceeding permitting registration of AHLIC's mark, and (5) the Texas district court action below involving AHLIC's infringement claim and HLIC's counterclaim for cancellation. At the outset we must deal with AHLIC's contention that

HLIC is barred by the res judicata and collateral estoppel effects of the prior proceedings before the Patent Office and the Florida district court from defending or counterclaiming in this action.

■■ Under the doctrine of res judicata, a judgment on the merits in one suit bars a subsequent suit involving the same parties or their privies based on the same cause of action. Under the doctrine of collateral estoppel, on the other hand, such a judgment precludes relitigation of issues actually litigated and determined in the prior suit, regardless of whether the second suit is based on the same cause of action as the first. Lawlor v. National Screen Service Corp., 1955, 349 U.S. 322, 326, 75 S.Ct. 865, 867, 99 L.Ed. 1122, 1126. In the words of Mr. Justice Field, in "a second action between the same parties . . . upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered." Cromwell v. County of Sac, 1877, 94 U.S. 351, 353, 24 L.Ed. 195, 198. It forecloses inquiry only as to those issues which were necessarily determined. Exhibitors Poster Exchange, Inc. v. National Screen Service Corp., 5th Cir. 1970, 421 F.2d 1313, 1319.

■ In Lawlor, the Supreme Court held that a judgment dismissing a suit with prejudice constitutes an adjudication of the merits as fully and completely as if the order had been entered after trial and bars a later suit between the same parties on the same cause of action. But the Court noted that where the judgment is not accompanied by findings, the judgment does not bind the parties on any issue which might arise in connection with another cause of action. Lawlor v. National Screen Service Corp., supra, 75 S.Ct. at 868. Thus, such a judgment has only the most limited res judicata and collateral estoppel effect.

The Florida district court dismissed with prejudice and without any findings HLIC's registration suit, and subjected AHLIC's counterclaim for infringement to a voluntary dismissal without prejudice. Clearly, the voluntary dismissal of the counterclaim without prejudice has no res judicata or collateral estoppel effect on the present suit since it did not constitute an adjudication or a judgment on the merits. Public Service Commission v. Brashear Freight Lines, 1941, 312 U.S. 621, 626, 61 S.Ct. 784, 787, 85 L.Ed. 1083, 1086. The effect of the dismissal with prejudice of HLIC's registration action depends upon whether the present suit is based upon the same cause of action. A claim for service mark and trade name infringement and a claim for registration present different questions of law and fact, and the relief sought in one action is fundamentally different from the relief sought in the other. Speed Products Co. v. Tinnerman Products, 2nd Cir. 1955, 222 F.2d 61, 67. While the same parties are fighting over the same word in the two suits, in substance, the causes of action are not the same. In this circumstance, the dismissal warrants no res judicata treatment. *See* Exhibitors Poster Exchange, Inc. v. National Screen Service Corp., supra, 421 F.2d at 1316.[2] And consequently, it raises no collateral estoppel specter either, because the dismissal without findings does not bind the parties on any issues which have arisen in this different cause of action. Lawlor v. National Screen Service Corp., supra. Similarly, the prior dismissal has no res judicata or collateral estoppel effect on HLIC's counterclaim for cancellation.

This does not end the matter, however, for we must still determine the effect of the decisions of the Patent Office on the present litigation. The Supreme Court has held that

. . . when an administrative agency is acting in a judicial capacity and resolves disputes of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose.

United States v. Utah Construction and Mining Co., 1966, 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642, 660. That case, however, involved an appeal from a decision by the Advisory Board of Contract Appeals to whose findings the Wunderlich Act of 1954 gives "final and conclusive" effect. 41 U.S.C. § 321. And the Court had previously determined that with respect to this statutory provision, Congress did not intend a *de novo* determination of the facts by the courts. United States v. Carlo Bianchi & Co., 1963, 373 U.S. 709, 83 S.Ct. 1409, 10 L.Ed.2d 652.

By contrast, an appeal to a federal district court from a decision by the Trademark Trial and Appeal Board, pursuant to 15 U.S.C. § 1071(b), is in the nature of a trial *de novo*. Holiday Inns, Inc. v. Holiday Out in America, S.D.Fla.1972, 351 F.Supp. 537, 540, aff'd, 5th Cir. 1973, 481 F.2d 445; *see also* 15 U.S.C. § 1119. In our judgment, this indicates a congressional intent not to invoke the immunizing doctrines of res judicata or collateral estoppel in connection with Patent Office proceedings.[3] *See* R. Callman, The Law of Unfair Competition § 82.4, at 867 (3d ed. 1969). We do not mean to suggest that application of the doctrines of res judicata and collateral estoppel to administrative decisions does not serve a useful purpose in preventing the relitigation of issues properly determined administratively.

2. *See also* Giannini Controls Corp. v. Litton Precision Products, P.O.T.T.A.B.1966, 150 U.S.P.Q. 387, 389; Libbey-Owens-Ford Glass Co. v. Shatterproof Glass Corp., E.D.Mich. 1970, 165 U.S.P.Q. 335, 336.

3. "Under the federal rule, an appeal that constitutes a proceeding de novo vacates the appealed judgment and suspends its operation as res judicata and collateral estoppel." 1B Moore's Federal Practice, ¶ 0.416 [3], at 2254 (1974). *See* Westinghouse Elec. & Mfg. Co. v. Wadsworth Elec. Mfg. Co., 6th Cir. 1931, 51 F.2d 447, 448.

**10**

Sunshine Anthracite Coal Co. v. Adkins, 1940, 310 U.S. 381, 60 S.Ct. 907, 84 L.Ed. 1263. We do suggest, however, that the doctrines, with respect to administrative proceedings, are not applied with the same rigidity as their judicial counterparts. United States v. Smith, 8th Cir. 1973, 482 F.2d 1120, 1123. And we think this is especially wise in the context of the case before us, where Congress has given the federal court the power to look beneath and beyond the record before the Patent Office.

■■■■ This does not mean that Patent Office determinations are not entitled to great weight. On the contrary, in the context of a direct appeal from a Patent Office decision on an application for registration, this court has held that findings as to confusing similarity of marks must be accepted as controlling unless the contrary is established by "evidence 'which, in character and amount carries thorough conviction,'" notwithstanding that the case is heard *de novo* in the district court. Aloe Creme Laboratories, Inc. v. Texas Pharmacal Co., 5th Cir. 1964, 335 F.2d 72; *see also* Morgan v. Daniels, 1894, 153 U.S. 120, 14 S.Ct. 772, 38 L.Ed. 657. Even though this is an infringement and cancellation action rather than a direct appeal from a Patent Office registration proceeding, in our judgment the "thorough conviction" standard extends to all findings made by the Patent Office in quasi-judicial, adversarial proceedings between the same parties and emanating from the Office's expertise. In the opposition proceeding, the Trademark Trial and Appeal Board stated that "Heritage" was an "arbitrary" term which was being used in connection with identical services offered by both companies and that AHLIC was the prior user of the service mark. Those findings were sufficient, in the Board's judgment, to sustain AHLIC's opposition. The opposition proceeding conducted by the Board was quasi-judicial in character, and its findings on arbitrariness and priority of usage are* grounded in the Patent Office's area of expertise. Consequently, while the findings do not merit application of the doctrine of collateral estoppel, they will be accepted by the federal court unless the contrary is established by evidence which carries thorough conviction.[4]

■■■■ The ex parte AHLIC registration proceeding is viewed through yet another prism. For under the Lanham Act, registration by itself does not enlarge a registrant's substantive rights in a mark. It does, however, confer procedural advantages which affect the burden of proof. Turner v. HMH Publishing Co., 5th Cir. 1967, 380 F.2d 224, 228, cert. denied, 389 U.S. 1006, 88 S.Ct. 566, 19 L.Ed.2d 601. Under the Act, registration is prima facie evidence of the registrant's ownership of the mark and of the registrant's exclusive right to use the mark in commerce in connection with the services specified in the registration certificate. 15 U.S.C. §§ 1057(b), 1115(a). Thus registration is sufficient to establish prima facie (1) the required prior use (2) of a registrable mark (3) which is likely to be confused with another's use of the same or a similar mark.

We review the district court's findings and analyze the parties' contentions with these standards as our guides.

### III

■■■■ In an action for infringement of a registered service mark, the threshold question is whether the word or symbol is registrable or protectable. World Carpets, Inc. v. Dick Littrell's

4. We should note, however, that the Board's "finding" of arbitrariness was conclusory and without explanation. The Board's opinion contains only one passing reference to arbitrariness: "In the opinion of the Board, both parties are using the arbitrary term "HERITAGE" on identical services . . . ." American Heritage Life Insurance Company v. Heritage Life Insurance Company, U.S.P. O.T.T.A.B.1964, 143 U.S.P.Q. 45, 46. Therefore, we do not know the evidence upon which the Patent Office relied or the reasoning behind the finding.

New World Carpets, 5th Cir. 1971, 438 F.2d 482, 485. The Lanham Act defines a service mark to be "a mark used in the sale or advertising of services to identify the services of one person and distinguish them from the services of others." 15 U.S.C. § 1127. Generally, to be registrable or protectable, a service mark must meet the statutory standards required of trademarks. *See* 15 U.S.C. §§ 1053, 1052. Under those standards, generic or highly descriptive words are normally not proper subjects for registration or protection as marks because they rarely attain the quality of distinctiveness required by the Act or the common law and because, as a matter of public policy, others should be equally entitled to use such nondistinctive words. Nevertheless, such a service mark will be protected where it has acquired a secondary meaning which arises from the applicant's use of the word as a service mark and which thus makes the word distinctive of the applicant or of its services. Application of Andes Candies, 1973, 478 F.2d 1264, 1267, C.C.P.A.; Continental Motors Corp. v. Continental Aviation Corp., 5th Cir. 1967, 375 F.2d 857, 861; Day-Brite Lighting, Inc. v. Sta-Brite Fluorescent Mfg. Co., 5th Cir. 1962, 308 F.2d 377, 382; 15 U.S.C. §§ 1052(e)(1), 1052(f).

 Noting that the word "heritage" means "something that descends to an heir; something transmitted by or acquired from a predecessor; a legacy," the district court concluded that all life insurance companies are, in a very real sense, "in the business of providing 'heritages,' usually for the benefit of the family of the insured."[5] Consequently, the district court held that the word

"heritage" is generic or descriptive of life insurance, rather than arbitrary or suggestive. Some courts distinguish between generic and descriptive terms, but in any case, the distinction between them is necessarily one of degree. A generic term conveys information about the nature or class of an article or service, whereas a descriptive term identifies the characteristics and qualities of the article or service, its color, odor, functions, dimensions, or ingredients. Generic terms broadly suggest that the basic nature of articles or services. *See* 3 R. Callman, The Law of Unfair Competition, supra, § 70.4, at 111; W. E. Bassett Co. v. Revlon, Inc., 2nd Cir. 1970, 435 F.2d 656, 661; Application of Andes Candies, Inc., supra, 478 F.2d at 1266. The industry itself evidently recognizes the truth of the district court's finding because the word "heritage" is used in the corporate names of insurance companies all over the country. Although we have looked at the word's etymology, we need not engage in hypertechnical philological analysis to agree with the district court that "heritage" is a singularly appropriate word for conveying information with respect to the nature of life insurance. Mindful of the burden of proof under the "thorough conviction" standard, we cannot say that the district court's finding was clearly erroneous. Tennessee Valley Authority v. Monsanto Chemical Co., 5th Cir. 1967, 383 F.2d 973.

 At the same time, we are equally mindful of the Socratic admonition that words are more plastic than wax.[6] To paraphrase Judge Learned Hand, words are chameleons, which reflect the color of their environment.[7] We must

---

5. The dictionary definition of the word is an appropriate and relevant indication "of the ordinary significance and meaning of words" to the public. Claremont Polychemical Corp. v. Atlantic Powdered Metals, Inc., 1972, 470 F.2d 636, 637, C.C.P.A. And of course, the only relevant reference point is meaning in the eyes of the purchasing public. The etymology of the word is supportive of the district court's conclusion. The word "heritage" is derived from the Latin

"hereditare," which suggests the verb "to inherit." *See* Webster's Third New International Dictionary (unabridged ed. 1961) at 1059.

6. *See* Plato, Republic IX, at 588d, in Hamilton and Cairns, eds., The Collected Dialogues (Princeton 1969).

7. C.I.R. v. National Carbide Corp., 2nd Cir. 1948, 167 F.2d 304, 306. *See also* the words of Justice Holmes in Towne v. Eisner, 1917,

therefore consider whether AHLIC has used "Heritage" in such a way that the word has now taken on a secondary meaning which the public associates with AHLIC. The district court found that "heritage" was "a word whose primary meaning was so intimately associated with and descriptive of the services intended to be distinguished in commerce" that "strong evidence of secondary meaning" would be required before AHLIC could be permitted to appropriate it. We agree that the evidentiary burden necessary to establish secondary meaning is substantial where the proposed mark's original or primary meaning suggests the basic nature of the service to be rendered.[8] *See* Aloe Creme Laboratories, Inc. v. Milsan, Inc., 5th Cir. 1970, 423 F.2d 845, 850, cert. denied, 398 U.S. 928, 90 S.Ct. 1818, 26 L. Ed.2d 90; W. E. Bassett Co. v. Revlon, Inc., supra, 435 F.2d at 661.

■■■ The test of secondary meaning is the effectiveness of the effort to create it, and the chief inquiry is directed toward the consumer's attitude about the mark in question: does it denote to him or her "a single thing coming from a single source?" Carter-Wallace, Inc. v. Procter & Gamble Co., 9th Cir. 1970, 434 F.2d 794, 802; Aloe Creme Laboratories, Inc. v. Milsan, Inc., supra, 423 F. 2d at 849. Has the word, in the mind of the public, come to stand as a name or identification for this firm? Continental Motors Corp. v. Continental Aviation Corp., 5th Cir. 1967, 375 F.2d 857, 861. Since the word is generic with respect to

life insurance, "the plaintiff must show more than a subordinate meaning which applies to it. It must show that the primary significance of the term in the minds of the consuming public is not the product but the producer." [9] Kellog Co. v. National Biscuit Co., 1938, 305 U.S. 111, 118, 59 S.Ct. 109, 113, 83 L.Ed. 73, 78.

AHLIC began selling life insurance in January of 1957 in several southeastern states. The district court found that "although AHLIC regularly advertised its insurance services, from that time until the present, [AHLIC] has never referred to itself by use of the word 'Heritage' not preceded by 'American' in any magazine advertisement, newspaper advertisement, or radio or television advertisement." The district court further found, and it is not disputed, that the word "Heritage" is not featured in a different script, style, or color from the word "American" in any of its advertising material.

The record also shows that none of AHLIC's insurance policies uses the word "Heritage" alone or without "American" as an antecedent. Indeed, there was no evidence presented of a single instance where AHLIC promoted before the public the shortened name "Heritage" or "Heritage Life." Even in its annual reports, prospectuses offering stock, stock transfer data, and other corporate material, AHLIC has not referred to itself as "Heritage" or "Heritage Life," but as "American Heritage," "American Heritage Life," or by its full corporate name.

245 U.S. 418, 425, 38 S.Ct. 158, 159, 62 L.Ed. 372, 376: "A word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used." And *see*, to like effect, Trimble v. City of Seattle, 1914, 231 U.S. 683, 688, 34 S.Ct. 218, 219, 58 L.Ed. 435, 438 (per Holmes, J.): "Words express whatever meaning convention has attached to them."

8. The terms, primary and secondary, may be somewhat misleading since a secondary meaning entitled to protection must have be-

come the primary meaning to the consumer. Aloe Creme Laboratories, Inc. v. Milsan, Inc., supra, 423 F.2d at 848 n. 9.

9. On the issue of secondary meaning, the burden of proof is on AHLIC. None of the Patent Office proceedings offers AHLIC any procedural advantage on this issue. The opposition proceeding never reached the issue of secondary meaning because of its finding of arbitrariness, a finding which has been rejected. Similarly, the AHLIC registration presumably emanates from the same finding of arbitrariness and does not rest on any notion of secondary meaning.

To sustain its claim of a right to "Heritage," AHLIC presented a number of newspaper and magazine articles which refer to AHLIC by the word "Heritage" not preceded by the word "American." But the district court concluded that the number of articles referring to AHLIC as "Heritage" was insignificant when compared with AHLIC's many years of corporate existence. Finally, AHLIC has argued that five primarily intracorporate uses of the word ostensibly as a service mark warrant a finding of secondary meaning. Following the district court's lead, we are not persuaded. None of the uses offered by AHLIC was before the insurance buying public. Secondary meaning can hardly arise without *public* awareness and acceptance of the mark. 3 R. Callman, The Law of Unfair Competition, supra, § 77.4(a), at 365, § 80.5, at 558; Bardahl Oil Co. v. Atomic Oil Co. of Okl., 10th Cir. 1965, 351 F.2d 148, 150. The uses of "Heritage" by AHLIC were before agents, employees, and selected shareholders of the company, but only rarely and incidentally before any member of the public. That does not amount to service mark usage, and clearly cannot create secondary meaning. In the words of Mr. Justice Frankfurter, AHLIC has not demonstrated that the effect of its activities has been "to impregnate the atmosphere of the market with the drawing power of a congenial symbol." Mishawaka Rubber and Woolen Mfg. Co. v. S.S. Kresge Co., 1942, 316 U.S. 203, 205, 62 S.Ct. 1022, 1024, 86 L. Ed. 1381, 1384.

In contrast to AHLIC's evidentiary showing, HLIC introduced testimony from the officers of eleven insurance companies which have the word "Heritage" in their corporate names and which do business all over the country, including AHLIC's home state of Florida. HLIC also offered proof of thirteen insurance agencies having "Heritage" in their names, including a Florida agency and two Texas agencies. This lack of exclusivity in the use of the word in the insurance industry is a factor militating against a finding of secondary meaning in AHLIC's use of the word. Carter-Wallace, Inc. v. Procter & Gamble Co., supra, 434 F.2d at 802.

Particularly relevant to the issue of secondary meaning is an opinion poll conducted by AHLIC in its home town of Jacksonville to determine whether the public recognized that "American Heritage" was synonymous with AHLIC. *See* Holiday Inns, Inc. v. Holiday Out in America, 5th Cir. 1973, 481 F.2d 445, 447. In the words of a top AHLIC officer, the company "was not elated at the results," despite the fact that the poll was taken with respect to "American Heritage," a name which AHLIC promotes much more strongly.

From this evidence, the district court concluded that the word "Heritage" has not become associated in the minds of the insurance buying public exclusively with either AHLIC or with any of its services. A claim of secondary meaning presents a question of fact, and the district court's finding on the issue, therefore, will not be disturbed unless clearly erroneous. Volkswagenwerk Aktiengesellschaft v. Rickard, 5th Cir. 1974, 492 F.2d 474; F.R.Civ.P. 52(a). From the evidence submitted, the district court could hardly have found otherwise. Consequently, AHLIC cannot be said to own any exclusive rights to the word "Heritage" which warrant a finding of service mark infringement.[10]

With this picture before us, we are equally convinced that the district court erred in refusing to order the cancellation of AHLIC's service mark registration. Section 37 of the Lanham Act provides that "in any action involving a registered mark," the court may

10. Because of our agreement with the district court on the generic or descriptive nature of the word and the lack of secondary meaning, we need not review the district court's findings on priority of usage or likelihood of confusion.

determine the right to registration and order the cancellation of registrations. 15 U.S.C. § 1119. Having determined that the word "Heritage" is generic or merely descriptive, and that it has not been endowed by AHLIC with secondary meaning sufficient to make the word distinctive, we believe that the Act's purposes would be served by ordering the cancellation of the registration. 15 U.S.C. §§ 1119, 1052(e)(1), 1052(f).

## IV

■ AHLIC has raised an alternative charge against HLIC based on the law of unfair competition generally and trade name infringement specifically. The law of unfair competition is the umbrella for all statutory and nonstatutory causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters. 3 R. Callman, The Law of Unfair Competition, supra, § 4.1, at 120. In its complaint, AHLIC alleged both a statutory and a common law cause of action for unfair competition.

■ The complaint charged that HLIC's use of its corporate name in connection with the advertising and sale of insurance constitutes "a false designation of origin" and "A false representation" that its services rendered in connection with its advertising and selling originate with AHLIC, in violation of section 43(a) of the Lanham Act. 15 U.S.C. § 1125(a).[11] While we have rejected the view that the Lanham Act brought all claims of unfair competition by those engaged in interstate commerce within the federal question jurisdiction of the federal district courts, Royal Lace Paper Works, Inc. v. Pest-Guard Products, Inc., 5th Cir. 1957, 240 F.2d 814, we have recognized that section 43(a) creates a federal cause of action for false representation of goods or services in commerce. Alum-A-Fold Shutter Corporation v. Folding Shutter Corp., 5th Cir. 1971, 441 F.2d 556, 557; Norman M. Morris Corp. v. Weinstein, 5th Cir. 1972, 466 F.2d 137, 141.

■ But AHLIC offered no evidence to show that HLIC made false representations with respect to its advertising and sales of insurance or to show that HLIC was engaged in any advertising or selling activities that were likely to undermine AHLIC's reputation or business. Furthermore, the district court found no evidence which suggested that HLIC had engaged in any wrongful conduct with respect to AHLIC. In the face of that meager showing, we can only conclude that AHLIC has failed to prove a violation of the statute.

Under its common law unfair competition claim, AHLIC contends that it is known by nicknames such as "Heritage" and "Heritage Life," nicknames which the insurance buying public associates with the company. AHLIC also contends that the word "Heritage" is the dominant part of its name so that by doing business under the corporate name Heritage Life Insurance Company without a distinguishing prefix, HLIC has infringed upon AHLIC's trade name and created a likelihood of consumer confusion.

As a preliminary matter, a word should be said about the law applicable to common law unfair competition claims. The federal court's jurisdiction over the common law claim was asserted upon the basis of diversity of citizenship, 28 U.S.C. § 1332, and upon the ground that the claim was joined with a substantial and related claim under the trademark laws, 28 U.S.C. § 1338(b). In those circumstances, the common law claim would appear to require the appli-

---

11. That section provides in part that "any person who shall . . . use in connection with any goods or services . . . any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce . . . shall be liable to a civil action by . . . any person who believes that he is or is likely to be damaged by the use of any such false description or representation." 15 U.S.C. § 1125(a).

cation of state law.[12] *See* Maternally Yours, Inc. v. Your Maternity Shop, Inc., 2nd Cir. 1956, 234 F.2d 538, 540–541, n. 1.

But neither the district court nor the parties have raised any question about whether federal or state law should be applied, and neither has asserted that the law of one state as against that of another is controlling or would make any difference.[13] As a practical matter the question may be more theoretical than real since the governing law of unfair competition in trade names developed in the federal courts. Blisscraft of Hollywood v. United Plastics Co., 2nd Cir. 1961, 294 F.2d 694, 697. As a matter of doctrine, the issue should be faced. Fortunately, we need not do so since the district court fully considered the evidence offered on every theory of unfair competition which has been suggested by AHLIC.

We have already noted that the evidence does not support AHLIC's contention that the word "Heritage" is identified with AHLIC by the insurance buying public. Without a demonstration of distinctiveness, AHLIC cannot sustain its claim of trade name infringement, unless there is evidence either of actual passing off on the part of HLIC or of an intent to do so. American Gold Star Mothers v. National Gold Star Mothers, 1951, 89 U.S.App.D.C. 269, 191

F.2d 488, 490. But as the district court found, the record is devoid of any such evidence. The lack of distinctiveness is also fatal to a claim of dilution, for it is clear that a nondistinctive mark cannot be diluted. Holiday Inns, Inc. v. Holiday Out in America, supra, 481 F.2d at 450. The district court concluded that there was insufficient evidence of a lack of commercial fairness in HLIC's actions to support a finding of unfair competition. Whether or not there has been unfair competition is a mixed question of law and fact, which can only be decided after a review of all the evidence. B. H. Bunn Co. v. AAA Replacement Parts Co., 5th Cir. 1971, 451 F.2d 1254, 1259, 1262. Our review convinces us that the district court's conclusion is correct. Creamette Co. v. Conlin, 5th Cir. 1951, 191 F.2d 108.

V

Because of the very nature of our enterprise, what we have said today may have little eternal significance. Although the word "Heritage" is generic of life insurance, and today neither party can claim the required distinctiveness, tomorrow the word may grow in individuality. Such is the character of human language and, we might add, sophisticated marketing technique. *See* Continental Motors Corp. v. Continental Aviation Corp., supra, 375 F.2d at 862. Nevertheless, for the life insurance com-

---

12. But the matter is not altogether free from doubt. *See* Maternally Yours, Inc. v. Your Maternity Shop, Inc., supra, 234 F.2d at 545–546 (per Chief Judge Clark's concurring opinion) ; 1A Moore's Federal Practice ¶ 0.326 at 3770–73 (1965).

13. Assuming that state law would apply, deciding which state's law to apply is not an easy task. First, we must characterize the claim. In deciding how the matter should be characterized for conflict of laws purposes, it is clear that the law of the forum should control. Fahs v. Martin, 5th Cir. 1955, 224 F.2d 387. In Texas, unfair competition is a tort. *See* Oliver Gintel, Inc. v. Koslow's, Inc., N.D.Tex.1973, 355 F.Supp. 236, 239, and cases cited therein. Second, we must

determine the conflicts rule of the jurisdiction thus selected. The Texas rule is that the unfair competition claim is governed by the tort law of the state in which the cause of action arises. *See* General Adjustment Bureau, Inc. v. Fuess, S.D.Tex.1961, 192 F. Supp. 542, 537, and cases cited therein ; *see generally* Klaxon Co. v. Stentor Electric Mfg. Co., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477. But this is ostensibly a multistate tort, and hence arises in not one but many states. For the problem thereby created, *see* Note, The Choice of Law in Multistate Unfair Competition : A Legal-Industrial Enigma, 60 Harv.L.Rev. 1315 (1947) ; 1A Moore's Federal Practice ¶¶ 0.326, 0.327 ; Weintraub, Commentary on the Conflict of Laws (1971) at 259–61.

pany seeking to appropriate this word, the burden of proving distinctiveness is a heavy one, and until that evidence emerges, this battle should be at an end.[14]

Affirmed in part; reversed in part.

14. For the battle over "Heritage" as a trademark for furniture, see Drexel Enterprises, Inc. v. Hermitage Cabinet Shop, Inc., N.D.Ga.1967, 266 F.Supp. 532; Drexel Enterprises, Inc. v. Richardson, 10th Cir. 1962, 312 F.2d 525; Drexel Enterprises, Inc. v. Heritage House of Dallas, Inc., N.D.Tex. 1963, 136 U.S.P.Q. 415; Drexel Enterprises, Inc. v. Colby, S.D.Colo.1963, 138 U.S.P.Q. 1; Drexel Enterprises, Inc. v. American Heritage, Inc., D.C.Conn.1964, 142 U.S.P.Q. 194