# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 13, 2008

Charles R. Fulbruge III
Clerk

No. 08-60155
Summary Calendar

URGENT CARE INC; URGICARE INC

Plaintiffs–Counter-Defendants–Appellees

v.

SOUTH MISSISSIPPI URGENT CARE INC; AMY ALI; RONNIE ALI

Defendants–Counter-Claimants–Appellants

v.

LYDIA KING RAYNER

Counter-Defendant–Appellee

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:07-CV-138

Before JOLLY, BENAVIDES, and HAYNES, Circuit Judges.

PER CURIAM:[*]

This case involves a trademark infringement dispute between two providers of urgent care medical services along the Mississippi Gulf Coast. The district court granted a preliminary injunction in favor of Appellees, enjoining

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Appellant South Mississippi Urgent Care, Inc. from using the term "Urgent Care" in its name, signs, telephone greetings, or promotional materials. For the reasons below, we REVERSE.

I.

Lydia King Rayner ("Rayner") began operating Urgent Care, Inc. in the Mississippi Gulf Coast area in 1985. On March 30, 2001, the Mississippi Secretary of State registered the service mark "Urgent Care, Inc."[1] to Rayner for use in the "Medical Services" arena. Rayner did not register the "Urgent Care" service mark with the United States Patent and Trademark Office ("USPTO"). Rayner also set up a corporation named "Urgicare, Inc." in the Mississippi Gulf Coast area. Rayner registered the service mark "UrgiCare" with the Mississippi Secretary of State on April 21, 2006, and with the USPTO on April 17, 2007.[2] Rayner alleged in her complaint that the pronunciation of "Urgicare" is very similar to "Urgent Care."

Dr. Ronnie Ali ("Ali") previously worked in Michigan at Henry Ford Urgent Care, Oakwood Hospital Urgent Care Clinic, and Lincoln Park Urgent Care Clinic. He moved to Mississippi and opened Apple Urgent Care Occupational Clinic with three other physicians. Ali relocated to the Mississippi Gulf Coast area and opened South Mississippi Urgent Care, Inc., shortly after Hurricane Katrina.

Rayner sent Ali and South Mississippi Urgent Care (collectively, "Appellants") a cease-and-desist letter demanding that Appellants cease use of

---

[1] The registration with the Mississippi Secretary of State's Office provides that the mark in question is "URGENTCARE INC." However, both parties and the district court primarily refer to the mark as "Urgent Care" and sometimes as "URGENTCARE." Our findings here apply with equal force to all three iterations of the mark.

[2] The registration with the Mississippi Secretary of State's Office provides that the mark in question is "URGICARE." However, the mark is identified in the USPTO registration as "UrgiCare." The parties primarily utilize the latter version. Our findings here apply with equal force to both iterations of the mark.

the mark "Urgent Care." Ali continued to operate his clinic as South Mississippi Urgent Care, and Rayner filed suit in state court alleging, inter alia, trademark infringement, trademark dilution, and unfair competition under the Lanham Act and MISS. CODE ANN. § 75-24-5. After removal to federal district court, Rayner filed a Motion for Preliminary Injunction requesting that Appellants be enjoined from using the mark "Urgent Care." The district court granted the preliminary injunction on December 6, 2007. Appellants timely appealed.

## II.

We review the grant of a preliminary injunction for abuse of discretion. Paulsson Geophysical Servs., Inc. v. Sigmar, 529 F.3d 303, 306 (5th Cir. 2008). Factual findings are reviewed for clear error whereas legal conclusions are reviewed de novo. Id.

## III.

To obtain a preliminary injunction, the movant must demonstrate:

> (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest.

Id. at 309 (internal quotations omitted). In a trademark infringement suit, the party seeking a preliminary injunction must: (1) "prove that the name he seeks to protect is eligible for protection"; (2) "prove he is the senior user"; (3) "show a likelihood of confusion between his mark and that of the defendant"; and (4) "show that the likelihood of confusion will actually cause him irreparable injury for which there is no adequate legal remedy." Union Nat'l Bank of Tex., Larado, Tex. v. Union Nat'l Bank of Tex., Austin, Tex., 909 F.2d 839, 844 (5th Cir. 1990).

In determining whether the mark at issue is protectable, the court must determine whether the mark is generic, descriptive, suggestive, or arbitrary/fanciful. Id. Assigning the mark into one of these categories

3

"determines whether or not, or in what circumstances, the word or phrase is eligible for trademark protection." Id. "A generic term is one which identifies a genus or class of things or services, of which the particular item in question is merely a member." Id. at 845. In other words, "[a] generic term connotes the 'basic nature of articles or services' rather than the more individualized characteristics of a particular product.'" Zatarains, Inc. v. Oak Grove Smokehouse, Inc., 698 F.2d 786, 790 (5th Cir. 1983) (quoting Am. Heritage Life Ins. Co. v. Heritage Life Ins. Co., 494 F.2d 3, 11 (5th Cir. 1974)). A generic term is never eligible for protection under trademark law. Id. In contrast, a descriptive term "identifies a characteristic or quality of the article or service" and is entitled to trademark protection only if secondary meaning is established.[3] Union Nat'l Bank of Tex., 909 F.2d at 844-45 (internal quotations omitted).

Categorization of a mark is a factual issue that we review for clear error. See id. at 846. In determining whether a mark is generic, the mark "must be compared to the product or service to which it is applied." Id. "To paraphrase Judge Learned Hand, the question is, 'What do the buyers understand by the word for whose use the parties are contending?'" Id. at 847 (quoting Bayer Co. v. United Drug Co., 272 F. 505, 509 (2d Cir. 1921)). In determining whether a mark is generic, we may consider the dictionary definition and consumer surveys, although neither is dispositive. Id. at 847. Furthermore, we may

---

[3] In Two Pesos, Inc. v. Taco Cabana, Inc., the Supreme Court explained that:

Secondary meaning is used generally to indicate that a mark or dress has come through use to be uniquely associated with a specific source. To establish secondary meaning, a manufacturer must show that, in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself.

505 U.S. 763, 766 n.4 (1992) (internal quotations omitted).

consider "whether others in the same business would generally need the word to adequately describe their product or service" and "evidence regarding how many other businesses, in the same industry, use the term to describe their product." Id. at 848.

Here, the district court found that Appellees established all of the required elements for preliminary injunctive relief, highlighting the likelihood of confusion between the parties' marks. Although the district court did not explicitly assign the marks "Urgent Care" and "UrgiCare" into a category, because it found a substantial likelihood of success on the merits, it can be assumed that the district court found the marks protectable (i.e., the marks are not generic and, if descriptive, they have acquired secondary meaning). We now address each mark in turn.

A. Urgent Care

The "Urgent Care" mark is not federally registered and Appellants–the alleged infringers–argue that the mark is generic. In such a situation, Appellees had the burden to establish that the mark is not generic. See, e.g., Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc., 198 F.3d 1143, 1146 (9th Cir. 1999); see also 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition 12-30 (2003) (collecting cases). We find that Appellees failed to meet this burden and the district court's implicit finding to the contrary was clearly erroneous.

Appellants argue that "Urgent Care" is a generic term for the provision of non-emergency medical services and point to its widespread use in the healthcare industry.[4] Appellants note that: (1) according to state registrations, more than twenty corporations in Mississippi and neighboring states use the

---

[4] According to the American Academy of Urgent Care Medicine, urgent care medicine "is defined as provision of immediate medical service (no appointment necessary) offering outpatient care for the treatment of acute and chronic illness and injury." American Academy of Urgent Care Medicine, http://www.aaucm.org.

term "Urgent Care" in their name; (2) at least ten medical providers in Mississippi registered with the USTPO have the term "Urgent Care" in their name; (3) the American Medical Association adopted the code "UCM" ("Urgent Care Medicine") for physicians who wish to designate themselves as urgent care specialists; and (4) several medical journals include the term "Urgent Care" in their title.

We find that the term "Urgent Care" has not "become distinctive of the applicant's goods in commerce" and, thereby, is a generic term that is not entitled to trademark protection. Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 769 (1992) (citing 15 U.S.C. § 1052(f)). In other words, the term "Urgent Care" is used so extensively that "others should be equally entitled to use such nondistinctive words." Am. Heritage Life Ins. Co., 494 F.2d at 11. Therefore, Appellees' mark is not protectable and the district court's grant of preliminary injunctive relief was in error. Accordingly, we need not address the district court's findings of likelihood of confusion and irreparable harm.

B. UrgiCare

The mark "UrgiCare" is federally registered and, thereby, enjoys a presumption of validity. Id. at 10. In contrast to the "Urgent Care" mark, Appellants do not argue that "UrgiCare" is not protectable. Thus, we assume it is a valid mark. However, Appellees maintain the burden of establishing likelihood of confusion. See Union Nat'l Bank of Tex., 909 F.2d at 844. The district court's analysis in finding likelihood of confusion centered exclusively on Appellees' "Urgent Care" mark, not the "UrgiCare" mark. Appellees argue that, because "UrgiCare" sounds like the phrase "urgent care," Appellants' use of the phrase "urgent care" is infringing and diluting its "UrgiCare" mark. This argument lacks merit. Because we find that "Urgent Care" is a generic term, Appellees cannot prevent use of the term by registering a similar-sounding, but differently spelled mark. See Am. Heritage Life Ins. Co., 494 F.2d at 11 (noting

that "others should be equally entitled to use such nondistinctive words"). We find that South Mississippi Urgent Care is sufficiently distinct from UrgiCare such that Appellees' trademark rights are not infringed upon. Therefore, the preliminary injunction also fails with respect to the "UrgiCare" mark.

## IV.

In light of the foregoing, we find that the district court's grant of preliminary injunctive relief was an abuse of discretion. The district court's judgment is REVERSED and REMANDED for proceedings consistent with this opinion.